**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE** and **JANE DOE** | : | Case No. 2:12-cv-188 |
| c/o David A. Singleton | : | |
| Ohio Justice & Policy Center | | |
| 215 East 9th Street, Suite 601 | : | Judge |
| Cincinnati, Ohio 45202 | : | |
| Plaintiffs, | : | |
| | : | Magistrate Judge |
| v. | : | |
| | : | |
| **JAMES HAAS**, Parole Officer; | : | **COMPLAINT** |
| **ANGELICA MANZ**, Parole Supervisor; | | |
| and **DAVID LOMAX**, Regional | : | |
| Administrator; in their official capacities, | | |
| Ohio Department of Rehabilitation and | : | |
| Correction, Adult Parole Authority | | |
| 770 West Broad Street | : | |
| Columbus, OH 43223, | : | |
| Defendants. | | |

## I.     PRELIMINARY STATEMENT

1. The rights to marry, live together as husband and wife, and parent children are among the most fundamental liberties the United States Constitution protects. The state has violated these cherished liberties in this case.

2. Plaintiffs John and Jane Doe have been married for twenty years. They have four children, who range in age from eight to seventeen. Faith is the cornerstone of their close-knit family.

3. Mr. Doe recently completed a seven-year sentence for sexual offenses involving two unrelated minors and is now on post-release control ("PRC"). Although Mr. Doe has never sexually assaulted his children and is not at risk of doing so, the state has imposed

special supervision conditions forbidding him from living in the family home and from having any contact with his children.  Although Mr. Doe visited with his children twice per month during his incarceration and communicated regularly with them by phone and letter, he risks re-incarceration if he calls, emails or texts them.

   4. As a result of the supervision conditions barring Mr. Doe from all contact with his children, the Doe family has been split apart.  Mrs. Doe has been forced to choose between being wife to Mr. Doe and mother to the couple's four children.  The children have effectively been rendered fatherless.

   5. The state has also forbidden Mr. Doe from going to the family home, even when the children are not there.  As a result, he is unable to perform routine maintenance on the home or otherwise enjoy his property.

   6. Additionally, the condition that Mr. Doe have "no contact with minors without [his parole officer's] permission" provides no guidance to Mr. Doe about what circumstances put him at risk for re-incarceration.  For example, it would appear that he would violate the restriction by having incidental contact with a minor, such as placing an order with a minor working the cash register at McDonald's.  When Mr. Doe asked for clarification of what contact with minors is permissible, his parole officer unhelpfully responded, "You know what I mean."

   7. Prohibiting Mr. Doe from living with his family and from having any contact with his children violates his substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution.  Additionally, the vague condition that Mr. Doe have no contact with any minor violates his substantive due process rights.  Accordingly, the Court should enjoin Defendants from enforcing these unconstitutional

conditions.

## II.    JURISDICTION AND VENUE

8. Jurisdiction over Plaintiff's claims is brought under 42 U.S.C. § 1983 and is conferred on this Court by 42 U.S.C. §§ 1331, 1343(3) and (4).  The Court has authority under 28 U.S.C. § 2201 to provide appropriate declaratory relief as to matters within its jurisdiction.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b), S.D. Ohio Civ. R. 82.1 (b)-(c) because defendants reside in the jurisdiction, and because the events giving rise to the claim that is the subject of this action occurred within the Eastern Division of the Southern District of Ohio.

## III.    PARTIES

10. Plaintiff John Doe is a forty-one-year-old man who resides in Newark, Ohio, which is located in Licking County.  He is married to Plaintiff Jane Doe.

11. Plaintiff Jane Doe is a forty-one-year-old woman who resides in Hebron, Ohio, which is also located in Licking County.

12. Defendant Jim Haas is employed as a parole officer with the Adult Parole Authority, a division of the Ohio Department of Rehabilitation and Correction.  He monitors and supervises individuals who are on PRC, including Plaintiff John Doe.  Defendant Haas is sued in his official capacity.

13. Defendant Angelika Manz is employed as a parole supervisor with the Adult Parole Authority.  She oversees the work of several parole officers, including Defendant Haas.  Defendant Manz is sued in her official capacity.

14. Defendant David Lomax is employed as a regional administrator of the Adult

Parole Authority. He is in charge of the Columbus Regional Office, out of which Defendants Haas and Manz work. Defendant Lomax supervises the parole officers and parole supervisors who work in the Columbus Regional Office, including Defendants Haas and Manz. Defendant Lomax is sued in his official capacity.

## IV. FACTUAL ALLEGATIONS

15. John and Jane Doe have known each other since childhood. They began dating when they were sixteen and married when they were twenty-one.

16. Mr. and Mrs. Doe have three boys and a girl. Their three sons are ages seventeen, thirteen and eight. Their daughter is fifteen.

17. Mr. and Mrs. Doe own a home together in Hebron, Ohio. This is the home where Mrs. Doe currently lives with the couple's four children and Mr. Doe's parents. The Does have owned the home for ten years.

18. In 2005, Mr. Doe pled guilty to one count of rape, six counts of unlawful sexual conduct with a minor, and three counts of sexual imposition. The offenses involved two female teenagers who were unrelated to him. The court sentenced Mr. Doe to seven years incarceration, and in 2010, amended the sentencing order to require that he serve five years PRC. His scheduled released date was January 24, 2012.

19. The sentencing judge also adjudicated Mr. Doe a sexually oriented offender and ordered that he register as a sex offender for ten years. Under Ohio's sex offender classification scheme, the sexually oriented offender designation is reserved for individuals with the lowest risk of reoffending.

20. Faith is very important to Mr. and Mrs. Doe and their four children. They rely on their faith, especially during difficult or challenging times. Drawing on their faith, Mr. and

Mrs. Doe resolved to keep their marriage strong throughout his incarceration. She and the children visited Mr. Doe twice per month – the maximum number of family visits allowed under prison rules – and talked nearly every night by phone. Mr. and Mrs. Doe also wrote each other letters nearly every day during the seven years of his incarceration.

21. During his nightly calls home, Mr. Doe would talk with his children about their progress in school and about other areas of their lives. Sometimes, he would referee disputes between the children or would serve as the mediator when the children disagreed with their mother.

22. In his calls to his children and in the letters he wrote to them, Mr. Doe always expressed his love for them and usually offered words of parental advice, wisdom and encouragement.

23. Mrs. Doe and her four children missed Mr. Doe while he was incarcerated and eagerly awaited his return to the family home.

24. In September 2011, the Adult Parole Authority began preparing for Mr. Doe's return to the community. As part of that process, Mr. Doe had to complete forms showing where he planned to live while on PRC so his parole officer, Defendant Haas, could approve the address. Mr. Doe listed the home where he resided with Mrs. Doe and their children before his incarceration.

25. At some point after Mr. Doe notified the Adult Parole Authority of his intention to return to his family home, Defendant Haas visited the home and spoke to Mrs. Doe. During that visit, Defendant Haas told Mrs. Doe that the home was too close to a school and could not be approved as a residence for Mr. Doe while on PRC. Defendant Haas explained that Ohio law forbids people who have been convicted of sex offenses from living within

1,000 feet of schools.

26. In reality, the Doe's home is located more than 1,000 feet from a school. Eventually, Mr. Haas realized that the information he had about the home's distance from a school was wrong.

27. But Defendant Haas still refused to approve the address. The new reason he gave was the presence of minors – Mr. Doe's own children – in the home.

28. When Mrs. Doe explained that Mr. Doe's charges did not involve his children, Defendant Haas suggested that she speak with Jackie Webb, the Adult Parole Authorities sex offender specialist.

29. Mrs. Doe then called Ms. Webb. During their conversation, Ms. Webb conceded that there was no law prohibiting Mr. Doe from residing with his minor children but said that the approval of Mr. Doe's address was left to the discretion of Defendant Haas.

30. Shortly after her discussion with Ms. Webb, Mrs. Doe had another conversation with Defendant Haas, during which he informed her that if Mr. Doe did not provide an alternative address, Defendant Haas would ship him to Cleveland or Cincinnati for PRC supervision.

31. In November 2011, Defendant Haas called Mrs. Doe to discuss the issue of Mr. Doe's residence. During the call, she explained that the family home had once been a duplex and that the family would be willing to convert it back to provide a separate residence for Mr. Doe. Defendant Haas said that his supervisor, Defendant Manz, would not approve Mr. Doe's residing in a duplex connected to the home where his children lived. Defendant Haas warned Mrs. Doe that if Mr. Doe did not find a suitable address Defendant Haas might have to "put him under a bridge."

32. Defendant Haas was not kidding about the bridge remark. On or about January 11, 2012, less than two weeks before Mr. Doe's scheduled release, Defendant Haas gave him a partial map of Newark, Ohio. The map included a handwritten notation marking the location of the "Homeless Offender Bridge." Defendant Haas's business card was stapled to the map.

33. During the conversation on January 11, 2012, Defendant Haas also informed Mr. Doe that no contact with his children meant that Mr. Doe could not phone, write, email or communicate in any fashion with them and that these restrictions could last for the entire five years Mr. Doe is on PRC.

34. Days before his scheduled release, Mrs. Doe made arrangements with a family friend for him to reside temporarily in a vacant home the friend owns in Newark, Ohio. Mr. Doe notified Defendant Haas of the potential residence on January 19, 2012. Defendant Haas approved the address on January 23, 2012, the day before Mr. Doe's release.

35. Mr. Doe was released from prison on January 24, 2012. Upon his release, Mr. Doe received an Adult Parole Authority document called "Conditions of Supervision." The conditions included the provision that he have "no contact with minors w/o PO permission." Defendant Haas reiterated that Mr. Doe was prohibited from having any contact whatsoever with his children, including by phone, email or letter.

36. Upon information and belief, the condition prohibiting Mr. Doe from residing with his family was made by Defendant Haas and approved by Defendants Manz and Lomax without any individualized consideration of whether those conditions were necessary to protect the Doe children and without individualized consideration of the harm that the Doe children would suffer as a result of being denied contact with their father.

37. Additionally, upon information and belief, the condition prohibiting Mr. Doe from residing with his family was made by Defendant Haas and approved by Defendants Manz and Lomax without individualized consideration of whether those conditions were necessary to advance Mr. Doe's rehabilitation.

38. On the day of his release, Mr. Doe also received an Adult Parole Authority document entitled "Grievance Procedures." The document explains that Mr. Doe does not have the right to use the administrative grievance process to complain about Parole Board imposed conditions. During a conversation on January 24, 2012, Defendant Haas confirmed that the restriction on Mr. Doe's not living at home was not grievable.

39. Since being released from prison, Mr. Doe has not communicated with his children. Although Defendant Haas has approved Mr. Doe's attendance at the family church, he has told Mr. Doe that there must be at least one adult between him and his children and that he may not talk to his children while in church. When attending church, Mr. Doe abides by Defendant Haas's directives.

40. Additionally, since February 14, 2012, Defendants have prohibited Mr. Doe from visiting his home even when his children are not there. On that day, Defendant Haas required Mr. Doe to wear a GPS tracking device that will alert the Adult Parole Authority if Mr. Doe goes near certain "exclusion zones." Defendant Haas informed Mr. Doe that one of those zones is the Doe family home. Thus, Mr. Doe risks violating his PRC if he sets foot in his home – even if his children are not there. As a result, he is unable to contribute to the upkeep of his house or otherwise enjoy his property.

41. The Doe family has been torn apart as a result of Mr. Doe's absence. The children miss their father and are experiencing anxiety. Seeing their father in church is

particularly tough for the children, since they cannot touch, hug, or talk to him. It is as if their father is a ghost in their midst. At times, the children have become resentful of their mother and others who are able to visit with their father.

42. Mrs. Doe has been forced to choose between spending time with her husband at the Newark address, and devoting attention to her children at the Hebron address. Because of the guilt she feels as a result of spending nights away from her children, Mrs. Doe sleeps at Mr. Doe's residence usually no more than two times per week. She worries that her marriage could be adversely affected.

43. Mr. Doe has never abused his children and is not a risk to them. He loves them very much and simply wants to be the best father he can be. He also wants to be the husband his wife deserves. If these restrictions remain in effect during the entire period of his PRC, there will only be one child in the home left to parent when he is allowed to return to his family. And his marriage to Mrs. Doe has been substantially burdened.

## VI.    CAUSES OF ACTION

44. Defendants have, under color of state law, deprived Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution.

**COUNT I: VIOLATION OF FUNDAMENTAL RIGHT TO PARENT CHILDREN**

45. Mr. Doe has been deprived of the fundamental right to parent his four children in violation of the Fourteenth Amendment to the United States Constitution.

46. The prohibition against Mr. Doe's having any contact with his children – including by phone, email or letter – does not advance his rehabilitation nor does it protect the general public. To the contrary, both Mr. Doe and his children are being harmed by the restriction.

47. The imposition of this condition is not narrowly tailored to serve a compelling government interest.

48. Defendants' failure to permit Mr. Doe to maintain a relationship with his children violates rights guaranteed to him by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is actionable pursuant to 42 U.S.C. § 1983.

**COUNT II: VIOLATION OF FUNDAMENTAL RIGHT TO SPOUSAL RELATIONSHIP**

49. Defendants have deprived Mr. and Mrs. Doe of their fundamental right to maintain a spousal relationship in violation of the Fourteenth Amendment to the United States Constitution.

50. The condition prohibiting Mr. Doe from residing with his wife in their marital home neither advances the goals of his rehabilitation nor protects the general public.  Nor is the imposition of this condition narrowly tailored to serve a compelling government interest.

51. The prohibition against Mr. Doe living with Mrs. Doe in their marital home has substantially burdened their marriage.

52. Defendants' refusal to allow Mr. Doe to live with Mrs. Doe in their marital home violates rights guaranteed to the Does by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is actionable pursuant to 42 U.S.C. § 1983.

**COUNT III: VIOLATION OF PROCEDURAL DUE PROCESS**

53. The challenged condition prohibiting Mr. Doe from residing with Mrs. Doe and their children was imposed without individualized consideration of whether those conditions were necessary for the protection of the Doe children, without individualized consideration of the harm that the children would suffer as a result, and without individualized

consideration of the harm that Mr. Doe suffers.

54. Defendants never provided Mr. Doe with a meaningful opportunity to be heard as to the necessity of his being prohibited from living with Mrs. Doe and their children. In fact, Defendant Haas informed Mr. Doe that the issue was not grievable.

55. The procedures used to prohibit Mr. Doe from residing with his family violate rights afforded to him by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is actionable pursuant to 42 U.S.C. § 1983.

**COUNT IV: VIOLATION OF DUE PROCESS – VOID FOR VAGUENESS DOCTRINE**

56. In addition to being prohibited from living in his marital home with his wife and children, Mr. Doe is also forbidden from having any contact with minors without the permission of Defendant Haas.

57. This condition does not provide sufficient guidance about what contact is or is not prohibited. It is unclear whether Mr. Doe runs afoul of this restriction whenever he has incidental contact with a minor. Adding to the confusion, when asked by Mr. Doe what "contact" means, Defendant Haas replied, "You know what I mean."

58. An average citizen in Mr. Doe's shoes would not know what conduct this condition prohibits.

59. The vague condition that Mr. Doe have "no contact with minors" without his parole officer's permission, violates rights afforded to Mr. Doe by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is actionable pursuant to 42 U.S.C. § 1983.

**COUNT V: VIOLATION OF DUE PROCESS – TAKING PROPERTY WITHOUT JUST COMPENSATION**

60. Defendants have taken Mr. Doe's property without just compensation in violation

of the Fifth Amendment of the United States Constitution, as applicable to the states through the Fourteenth Amendment.  Defendants have done so by prohibiting Mr. Doe from living in his home and going to his property, even when his children are not there.  As a result, Mr. Doe has been deprived of all use and enjoyment of his property, for which the state has not compensated him.

61. The challenged condition was imposed without individualized consideration of whether that condition was necessary for the protection of the Doe children.

62. The challenged condition is not narrowly tailored to advance a compelling government interest.

63.  Defendants' refusal to let Mr. Doe live in and visit his home has effected a taking of his property for which compensation is required.  Because the state has provided no compensation, Defendants have violated Mr. Doe's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Mr. and Mrs. Doe pray that this Court grant them the following relief:

A. Issue a preliminary and permanent injunction barring enforcement of the challenged conditions of post-release control as applied to Mr. Doe;

B. Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201, finding that the challenged conditions of post-release control unconstitutionally have deprived: (i) Mr. Doe of his fundamental right to parent his children; (ii) Mr. and Mrs. Doe of their fundamental rights to live together as husband and wife; and (iii) Mr. Doe of his right to procedural due process; and (iv) Mr. Doe of his right to have adequate warning of what "no contact with minors" means; (v) Mr. Doe of his property without just compensation;

C. Reasonable attorney's fees and costs incurred in prosecuting this action; and

D. Such other relief as this Court finds just and equitable.

Respectfully submitted,

/s/ David A. Singleton
David A. Singleton, #007456
Trial Attorney for Plaintiff
Margie Slagle, #0082217
Deana Taylor*
James Charles Kinsman*
Alex Havlin*
Legal Interns
Ohio Justice & Policy Center
215 East Ninth Street, Suite 601
Cincinnati, Ohio 45202
(513) 421-1108 ext. 17
dsingleton@ohiojpc.org
mslagle@ohiojpc.org
taylord7@mymail.nku.edu
kinsmanc1@mymail.nku.edu
havlina1@mymail.nku.edu

*Authorized to assist in the representation of Plaintiff pursuant to Local Rule 83.6.