**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE** and **JANE DOE** | : | Case No. 2:12-cv-188 |
| Plaintiffs, | : | Judge Sargus |
| | : | Magistrate Judge Kemp |
| v. | : | **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION** |
| **JAMES HAAS**, et. al, | : | |
| | : | |
| Defendants. | : | |

Pursuant to Fed. R. Civ. Pro 65, and for the reasons enumerated in the accompanying Memorandum of Law, Plaintiffs John and Jane Doe move for a Temporary Restraining Order/Preliminary Injunction enjoining Defendants from prohibiting Mr. Doe from residing with Mrs. Doe in their family home and from having contact with their four children. A Memorandum of Law in support of this Motion is attached.

                                                Respectfully submitted,

                                                /s/ David A. Singleton
                                                David A. Singleton, #007456
                                                Trial Attorney
                                                Margie Slagle, #0082217
                                                Deana Taylor
                                                James Charles Kinsman
                                                Alex Havlin
                                                Co-Counsel
                                                Ohio Justice & Policy Center
                                                215 East Ninth Street, Suite 601
                                                Cincinnati, Ohio 45202
                                                (513) 421-1108 ext. 17
                                                dsingleton@ohiojpc.org
                                                mslagle@ohiojpc.org
                                                taylord7@mymail.nku.edu
                                                kinsmanc1@mymail.nku.edu
                                                havlina1@mymail.nku.edu

**MEMORANDUM OF LAW**

**FACTS**

John and Jane Doe have known each other since childhood. They began dating when they were sixteen and married when they were twenty-one. (Declaration of Jane Doe at ¶ 1) (Attached as Exhibit 1)  Mr. and Mrs. Doe have four children, three boys and a girl. *Id.*  Their three sons are ages seventeen, thirteen and eight, and their daughter is fifteen. *Id.*  Mr. and Mrs. Doe own a home together in Hebron, Ohio, where Mrs. Doe currently lives with the couple's four children and Mr. Doe's parents.  *Id.* at ¶ 2.  The Does have owned the home for ten years.  *Id.*

In 2005, Mr. Doe pled guilty to one count of rape, six counts of unlawful sexual conduct with a minor, and three counts of sexual imposition. (Declaration of John Doe at ¶ 2) (Attached as Exhibit 2)  The offenses involved two female teenagers who were unrelated to him.  *Id.*  The court sentenced Mr. Doe to seven years incarceration, and in 2010, amended the sentencing order to require that he serve five years post-release control ("PRC").  *Id.* at ¶ 3.   He was released on January 24, 2012 after serving the seven years.  *Id.*

The sentencing judge also adjudicated Mr. Doe a sexually oriented offender and ordered that he register as a sex offender for ten years.  *Id.* at ¶ 4.  Under Ohio's sex offender classification scheme, the sexually oriented offender designation is reserved for individuals with the lowest risk of reoffending.  *Id.*

Faith is very important to Mr. and Mrs. Doe and their four children.  (Jane Doe Decl. at ¶ 3) (John Doe Decl. at ¶ 5)  They rely on their faith, especially during difficult or challenging times.  *Id.*  Bolstered by this faith, Mr. and Mrs. Doe resolved to keep their marriage strong throughout his incarceration.  *Id.*  She and the children visited Mr. Doe twice per month – the maximum number of family visits allowed under prison rules – and talked nearly every night by

2

phone.  (Jane Doe Decl. at ¶ 4) (John Doe Decl. at ¶ 6)  Mr. and Mrs. Doe also wrote each other letters nearly every day during the seven years of his incarceration.  *Id*.  During his nightly calls home, Mr. Doe would talk with his children about their progress in school and about other areas of their lives.  (Jane Doe Decl. at ¶ 5) (John Doe Decl. at ¶ 7)  Sometimes, he would referee disputes between the children or would mediate when the children disagreed with their mother.  *Id*.  In his calls to his children and in the letters he wrote to them, Mr. Doe always expressed his love for them and usually offered words of parental advice, wisdom, and encouragement.  *Id*.  Mrs. Doe and her four children missed Mr. Doe terribly while he was incarcerated and eagerly awaited his return to the family home.  (Jane Doe Decl. at ¶ 6)

In September 2011, the Adult Parole Authority began preparing for Mr. Doe's return to the community.  (John Doe Decl. at ¶ 8)  As part of that process, Mr. Doe had to complete forms showing where he planned to live while on PRC so his parole officer, Defendant Haas, could approve the address.  *Id*.  Mr. Doe listed the home where he resided with Mrs. Doe and their children before his incarceration.  *Id*.  At some point after Mr. Doe notified the Adult Parole Authority of his intention to return to his family home, Defendant Haas visited the home and spoke to Mrs. Doe.  (Jane Doe Decl. at ¶ 7)  During that visit, Defendant Haas told Mrs. Doe that the home was too close to a school and could not be approved as a residence for Mr. Doe while on PRC.  *Id*.  Defendant Haas explained that Ohio law forbids people who have been convicted of sex offenses from living within 1,000 feet of schools.  *Id*.  In reality, the Doe's home is located more than 1,000 feet from a school.  *Id*. at ¶ 8.  Eventually Mr. Haas realized that the information he had about the home's distance from a school was wrong, but he still refused to approve the address.  *Id*.  The new reason he gave was the presence of minors – Mr. Doe's own children – in the home.  *Id*. at ¶ 9.

3

When Mrs. Doe explained that her husband's charges did not involve his children, Defendant Haas suggested that she speak with Jackie Webb, the Adult Parole Authority's sex offender specialist. *Id*. at ¶ 10. Mrs. Doe then called Ms. Webb. *Id.* at 11. During their conversation, Ms. Webb conceded that there was no law prohibiting Mr. Doe from residing with his minor children, but explained that approval of Mr. Doe's address was a matter for Defendant Haas to decide. *Id*. Shortly after her discussion with Ms. Webb, Mrs. Doe had another conversation with Defendant Haas, at which time he threatened to ship Mr. Doe to Cleveland or Cincinnati for PRC supervision if Mr. Doe did not find a suitable residence. *Id*. at ¶ 12.

In November 2011, Defendant Haas called Mrs. Doe to discuss the issue of her husband's residence. (Jane Doe Decl. at ¶ 13) During the call, she explained that the family home had once been a duplex and that the family would be willing to convert it back to provide a separate residence for Mr. Doe. *Id*. Defendant Haas said that his supervisor, Defendant Manz, would not approve Mr. Doe's residing in a duplex connected to the home where his children lived. *Id*.

Defendant Haas then warned Mrs. Doe that he might have to put her husband "under a bridge" if Mr. Doe did not find an appropriate address. *Id*. at ¶ 14. Apparently, Defendant Haas meant what he said. On or about January 11, 2012, less than two weeks before Mr. Doe's scheduled release, Defendant Haas gave him a partial map of Newark, Ohio. (John Doe Decl. at ¶ 10; Exhibit A to John Doe Decl.) The map included a handwritten notation marking the location of the "Homeless Offender Bridge." Defendant Haas's business card was stapled to the map. *Id.*

During the conversation, Defendant Haas also informed Mr. Doe that as a condition of his supervision, Mr. Doe was not allowed to have contact with his children. Defendant Haas explained that no contact with his children meant that Mr. Doe could not phone, write, email or

4

communicate in any fashion with them, and that these restrictions could last for the entire five years Mr. Doe is on PRC. (John Doe. Decl. at ¶ 10) Days before his scheduled release, Mrs. Doe made arrangements with a family friend for him to reside temporarily in a vacant home the friend owns in Newark, Ohio. (Jane Doe Decl. at ¶ 14) Mr. Doe notified Defendant Haas of the potential residence on January 19, 2012. (John Doe Decl. at ¶ 12) Defendant Haas approved the address on January 23, 2012, the day before Mr. Doe's release. *Id*.

Mr. Doe was released from prison on January 24, 2012. *Id*. at ¶ 13. Upon his release, Mr. Doe received an Adult Parole Authority document called "Conditions of Supervision." *Id*.; Exhibit B to John Doe Decl. The conditions included the provision that he have "no contact with minors w/o PO permission." *Id.* Defendant Haas reiterated that Mr. Doe was prohibited from having any contact whatsoever with his children, including by phone, email, or letter. (John Doe Decl. at ¶ 13)

On the day of his release, Mr. Doe also received an Adult Parole Authority document entitled "Grievance Procedures." *Id*. at ¶ 14; Exhibit C to John Doe Decl. The document explains that Mr. Doe does not have the right to use the administrative grievance process to complain about Parole Board imposed conditions. (Exhibit C to John Doe Decl.) During a conversation on January 24, 2012, Defendant Haas confirmed that the restriction prohibiting Mr. Doe from living at home was not grievable. (John Doe Decl. at ¶ 14.)

Since being released from prison, Mr. Doe has not communicated with his children. *Id*. at ¶ 15. Although Defendant Haas has approved Mr. Doe's attendance at the family church, he has told Mr. Doe that there must be at least one adult serving as a "buffer" between him and his children and that he may not talk to his children while in church. *Id*. at ¶ 16. When attending church, Mr. Doe abides by Defendant Haas's directives. *Id*.

5

Since February 14, 2012, Defendants have prohibited Mr. Doe from visiting his home even when his children are not there. *Id*. at ¶ 17. On that day, Defendant Haas required Mr. Doe to wear a GPS tracking device that will alert the Adult Parole Authority if Mr. Doe goes near certain "exclusion zones." *Id*. Defendant Haas informed Mr. Doe that one of those zones is the Doe family home. *Id*. Thus, Mr. Doe risks violating his PRC if he sets foot in his home – even if his children are not there. As a result, he is unable to contribute to the upkeep of his house or otherwise enjoy his property. *Id*.

The Doe family has been torn apart as a result of Mr. Doe's absence. (Jane Doe Decl. at ¶ 15) The children miss their father and are experiencing anxiety. *Id*. Seeing their father in church is particularly tough for the children; they cannot touch, hug, or talk to him. *Id*. Essentially, their father is a ghost in their midst. *Id*. At times, the children have become resentful of their mother and others who are able to visit with their father. *Id*. at ¶ 16.

Mrs. Doe has been forced to choose between spending time with her husband at the Newark address, and devoting attention to her children at the Hebron address. *Id*. at ¶ 17. Because of the guilt she feels as a result of spending nights away from her children, Mrs. Doe sleeps at Mr. Doe's residence usually no more than two nights per week. *Id*. These divisions and resentments are straining their family and their marriage, and she fears they could permanently destroy both. *Id*. at ¶ 18.

Mr. Doe has never abused his children and is not a risk to them.[1] (John Doe Decl. at ¶ 18) He loves them and wants to be the best father that he can be. *Id*. He also wants to be the

---

[1] Right before Mr. Doe's release, someone sent an anonymous letter to the Licking County Children's Services falsely accusing him of sexually abusing his daughter. (Jane Doe Decl. at ¶ 19). A representative from Children's Services and an officer from the Licking County Sheriff's Department interviewed Mr. Doe's daughter at school. *Id.* After the interview, the investigators concluded the allegation was false. *Id.*

6

husband that his wife deserves. *Id*. If these restrictions remain in effect during the entire period of his PRC, he will miss the opportunity to raise his children, only one of whom will still be a minor. *Id*. And he fears that the current strain and burden on his marriage will become so overwhelming, that his marriage will be destroyed. *Id*.

## ARGUMENT

The standards for issuing preliminary injunctions and temporary restraining orders ("TROs") are virtually the same. When considering a motion for a preliminary injunction:

> a court must consider the following four factors: 1. whether the movant is likely to prevail on the merits; 2. whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; 3. whether a preliminary injunction would cause substantial harm to others; and 4. whether a preliminary injunction would be in the public interest.

*G & V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994). In order for a court to grant a TRO, a plaintiff must also show that ''immediate and irreparable injury, loss, or damage will result'' if the TRO is not granted. *Doe v. Barron*, 92 F.Supp.2d 694, 695 (S.D. Ohio 1999) (quoting Fed. R.Civ.P. 65(b)(1)). As will be explained below, Plaintiffs John and Jane Doe satisfy the tests for immediate and preliminary injunctive relief.

### I. PLAINTIFF HAS A STRONG LIKELIHOOD TO SUCCEED ON THE MERITS

While on PRC, Mr. Doe, is not allowed to enter, let alone live in, the home where his wife and children reside. Additionally, he is not allowed to communicate with his children, be it in person or by phone, letter, or email. The only semblance of a family activity Mr. Doe currently enjoys is going to Sunday church services, where he is permitted to sit in the same pew as his children provided that there is at least one person serving as a "buffer" between him and his children. But even while in church, Mr. Doe may not speak to or otherwise communicate with his children. This restriction has split apart the Doe family and has substantially burdened Mr.

7

and Mrs. Doe's marriage. Given these facts, and in light of Supreme Court, Sixth Circuit and other federal case law, Mr. and Mrs. Doe are likely to succeed on the merits of their claims.

### A. The Standard

To be valid, parole conditions must be "directly related to advancing the individual's rehabilitation and to protecting the public from recidivism." *U.S. v. Ritter*, 118 F.3d 503, 505 (6th Cir. 1997). When parole conditions result in the deprivation of constitutionally-protected liberty interests, the Sixth Circuit has concluded that they are subject to "careful review." *U. S. v. Hughes*, 964 F.2d 536, 542 (6th Cir. 1992). More recent decisions from other circuits have held that conditions infringing on fundamental rights will only be upheld "if the deprivation is narrowly tailored to serve a compelling government interest." *U.S. v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005); *United States v. Loy*, 237 F.3d 251, 256 (3rd Cir. 2001) ("[A] condition that restricts fundamental rights must be narrowly tailored and directly related to deterring the defendant and protecting the public." (internal quotation omitted)). Regardless of which standard this Court uses, Mr. and Mrs. Doe prevail because the restrictions at issue in this case neither promote rehabilitation nor protect the public.

### B. Defendants Have Violated Plaintiffs' Fundamental, Substantive Rights.

"Choices about marriage, family life, and the upbringing of children are among associational rights th[e Supreme] Court has ranked as 'of basic importance in our society,' … rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996). Prohibiting Mr. Doe from living in his own home with his family violates both his and Mrs. Doe's fundamental familial rights.

8

### 1. Defendants have violated Mr. Doe's fundamental right to parent.

Defendants have prohibited Mr. Doe from having any contact with his children. This restriction is plainly unconstitutional in light of the fact that Mr. Doe has never abused his children and there is no evidence to suggest that he would do so.

The Supreme Court has repeatedly emphasized the fundamental interest of a parent in having a relationship with his children. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this court"); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specifically protected by the Due Process Clause includes the righ[t] … to direct the education and upbringing of one's children."); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and rights far more precious … than property rights."); *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder"). In short, there few liberties as cherished and protected as the right of a parent to raise his or her child. Unfortunately for Mr. Doe, Defendants have denied him the ability to do so.

Courts have been highly critical of restrictions that prohibit fathers who have been convicted of sex offenses not involving their children from having any contact with their children. *See e.g. United States v. Voelker*, 489 F.3d 139, 154 (3d Cir. 2007); *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006). A federal district court recently addressed an analogous no contact restriction and concluded it "was not reasonably related to the danger the plaintiff poses to his children." *Goings v. Court Svcs. and Offender Supervision*, 786 F.Supp.2d 48, 73 (D.D.C 2011).

In that case, Goings was convicted of sexual battery by a person in a position of custodial authority. His parole conditions prohibited him from having any contact with his children, including by telephone, mail, and electronic communication. *Id*. at 54, 57. After unsuccessfully attempting to resolve the issue informally, Mr. Goings filed suit alleging that probation officials had violated his fundamental right to parent. *Id.* at 58. After noting that Mr. Goings was a low risk offender and there was no evidence that he was attracted to his own children, the Court concluded:

> [a]bsent additional information supporting the defendant's position that the plaintiff is a danger to his children, there appears to be no basis to support [the] determination that the No Contact Provision is narrowly tailored or even reasonably related to the danger the plaintiff poses to his children.

*Id*. at 73. The court issued a preliminary injunction and enjoined enforcement of the restriction. *Id*. at 81.

Here, as in *Goings*, there is no evidence to support that Mr. Doe is a risk to his own children. To the contrary, Mr. Doe and his children have a very strong, loving bond that they maintained throughout his incarceration. Like Mr. Goings, Mr. Doe has been adjudicated a low risk offender. As in that case, this court should find that the PRC restriction against Mr. Doe is

10

not narrowly tailored to a compelling government interest and therefore deprives him of his fundamental right to raise his children. Accordingly, Mr. Doe is likely to succeed on his claim that the challenged condition violates his fundamental right to parent.

### 2. Defendants have violated Mr. and Mrs. Doe's fundamental right to live together as husband and wife.

Defendants have forbidden Mr. Doe from setting foot in the home he shares with Mrs. Doe. While they are able to see each other, this restriction necessarily precludes them from living together as a married couple with their children. As such, the restriction violates Mr. and Mrs. Doe's right to freedom of association.

In construing the "freedom of association," the Supreme Court has explained:

> the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty.

*Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984). Such "intimate human relationships" include the relationship of a married couple as the Court recognized in *M.L.B.*: "[c]hoices about marriage[ and] family life … are among associational rights this Court has ranked as 'of basic importance in our society,' … rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996).

The restriction at issue in this case has substantially burdened Mr. and Mrs. Doe's relationship. Mrs. Doe has been forced to choose between spending time with her husband and her children. At most, she spends a couple of nights per week with her husband because of the

11

guilt of not being available for her children. The stress on the spiritual, emotional, and physical aspects of their marriage is becoming unbearable.

Because Mr. Doe does not pose a danger to his children, this restriction neither promotes rehabilitation nor protects the public. Accordingly, Mr. and Mrs. Doe are likely to succeed on their claim that Defendants have violated the Does' fundamental right to live together as husband and wife.

### C. Defendants Have Denied Mr. Doe Procedural Due Process.

Mr. Doe is also likely to succeed on his claim that Defendants have denied him procedural due process.

The due process clause requires "the opportunity to be heard at a meaningful time and in a meaningful manner" when an individual is deprived of liberty or property interests. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The procedural protections due depend on a balancing of the public and private interests involved. *Id*. at 334. Courts must evaluate "(1) the significance of the private party's protected interest, (2) the government's interest, and (3) the risk of erroneous deprivation and the probable value, if any, of additional safeguards." *Id*. at 335.

*Goings* addressed the same procedural due process issue Mr. Doe raises in this case. There, probation officials imposed a condition prohibiting Goings from having contact with his children without providing him with notice of the basis for the agency's determination that the special condition was necessary or a hearing before an impartial judicial officer regarding imposition of the condition. *Goings,* 786 F.Supp.2d at 76-77. Balancing the *Mathews* factors, the court concluded that the first factor cut in Goings's favor since his interest in visiting his family is "significant." *Id.* at 77. Addressing the government's interest, the court concluded that

12

"[t]here is no question, as [Goings] acknowledges, that maintaining public safety and rehabilitating convicted sex offenders is an important government interest," but that there was no articulated "government interest in denying [Goings] notice and a hearing before" imposing the challenged condition.  *Id.*  Finally, the court evaluated the third *Mathews* factor and concluded that "the risk of erroneous deprivation of [Goings's] rights is great and the probable value of additional procedures is high."  Thus, the court concluded that the probation officers had denied Goings procedural due process.

Here, Defendants have deprived Mr. Doe of procedural due process.  As in *Goings*, Defendants gave Mr. Doe no notice of the basis of the no contact order, no explanation as to why they prohibited contact with his children, and no meaningful opportunity to be heard.  Like Goings, Mr. Doe has a significant – indeed, fundamental – liberty interest in parenting his children.  While Defendants, as did the probation officials in *Goings*, have an important interest in public safety and rehabilitation of convicted sex offenders, Defendants have no interest in denying Mr. Doe the opportunity to be heard in a meaningful forum as to whether the challenged restriction is necessary to promote the government's interests.  Finally, as in *Goings*, "the risk of erroneous deprivation of plaintiff's rights is great and the probable value of additional procedures is high." *Id*.

Accordingly, Mr. Doe is likely to succeed on the merits of his procedural due process claim.

### D. The Restriction Prohibiting Mr. Doe from Contact with Minors Is Unconstitutionally Vague.

Mr. Doe is subject to the condition that he have "no contact with minors without [his parole officer's] permission."  This condition does not provide sufficient guidance about what

13

contact is or is not prohibited.  It is unclear – unconstitutionally so – as to precisely what this restriction prohibits.

A due process violation occurs when a law "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."  *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).  "The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."  *Jordan v. De George*, 341 U.S. 223, 231-232 (1951).

Here, the amorphous instruction Mr. Doe received from Defendant Haas cannot be understood as a "definite warning" of the specific type of conduct that is prohibited.  For example, it is unclear whether Mr. Doe violates this condition if he simply has inadvertent contact with a minor.

Accordingly, Mr. Doe is likely to prevail on the merits of his void-for-vagueness claim.

### E. Defendants Have Deprived Mr. Doe of His Property Without Just Compensation.

By prohibiting Mr. Doe from living in his home and going to his property, even when his children are not there, this restriction has deprived Mr. Doe of all use and enjoyment of his property, for which the state has not compensated him.  Although the Fifth Amendment grants states the authority to take property, the taking must be for a "public use" and "just compensation" must be given to the property owner.  *Kelo v. City of New London*, 545 U.S. 469, 496 (2005).  A purely private taking serves no legitimate governmental purpose and cannot "withstand the scrutiny of the public use requirement…." *Id.* at 477.

Defendants have no legitimate reason to prohibit Mr. Doe from visiting his home, and have articulated no public purpose or benefit to be achieved by depriving Mr. Doe of his

14

property.  Thus prohibiting him from visiting his home cannot "withstand the scrutiny of the public use requirement…." *Id.*  Even if the state had a legitimate reason to prohibit Mr. Doe from the use and enjoyment of his property, its actions are unconstitutional because of the defendants' failure to give him just compensation.

Accordingly, prohibiting Mr. Doe from living in his home and going to his property violates the takings clause.

## II.  PLAINTIFF WILL SUFFER IRREPERABLE HARM IF THE PRELIMINARY INJUNCTION IS NOT GRANTED

Every minute that Mr. Doe is forced to be away from his family is one that is lost.  He will have to miss birthdays, sporting events, performances, and graduations.  More importantly, he will miss the opportunity to be a father to his children and a husband to his wife.  He and his wife will be prevented from serving as an example of parents and a married couple for their children.  If this restriction is enforced for the full five-year term of Mr. Doe's supervision, only one of his children will still be a minor when he is allowed to return home.  Mr. Doe will miss his opportunity to share in the upbringing of his children with his wife, which is one of the most important aspects of family life.

"[T]he Supreme Court held that when reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."  *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (*see also Goings v. Court Services and Offender Supervision Ag.*, 786 F.Supp.2d at 78 ("Given that the conditions imposed on the plaintiff limit his ability to see and interact with his family, his freedom of movement, and association, the Court finds that the plaintiff has demonstrated irreparable harm.").  Because Mr. Doe's fundamental rights to be a father to his children and a husband to

15

his wife are impaired by the challenged restriction, he will suffer irreparable harm if the preliminary injunction is not granted.

Finally, there is an immediate need for a TRO.[2] One of Mr. Doe's sons will turn fourteen on March 1, 2012. Under the terms of Mr Doe's no-contact-with-minors restriction, he is not even allowed to wish his son Happy Birthday.

### III. A PRELIMINARY INJUNCTION WILL NOT CAUSE SUBSTANTIAL HARM TO OTHERS

There is no evidence or reason based on his conviction to suggest that the plaintiff poses any risk of harm to his children. Indeed his family was allowed to see him while incarcerated and he was able to spend time with his family. Allowing Mr. Doe to live with his wife and children will not cause substantial harm to others.

However, to the extent that the court needs to hear evidence on this point, during the pendency of this litigation Mr. Doe should be allowed to have supervised contact with his children, which would include his return to the home so long as his wife or parents are present when the children are around.

### IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). As explained above, the PRC restriction is a violation of Mr. Doe's constitutional rights. As the *Goings* court explained, "there is no evidence to suggest that [Mr. Doe] poses any risk of harm to his children, and the public interest would not be furthered by isolating [Mr. Doe] from his family." 786 F.Supp. at 79. Accordingly, a preliminary injunction is in the public interest.

---

[2] Undersigned counsel has attempted to resolve this matter before commencing litigation but was unable to do so. (David A. Singleton Decl. attached as Exhibit 3)

16

**CONCLUSION**

For the foregoing reasons, Plaintiffs Mr. and Mrs. Doe respectfully request that this Court grant a TRO allowing Mr. Doe to live in his marital home and have contact with his children, provided that either his wife or parents are present when the children are there.  Additionally, Mr. Doe requests a preliminary injunction enjoining Defendants from enforcing the restriction.

Respectfully submitted,

/s/ David A. Singleton
David A. Singleton, #007456
Trial Attorney for Plaintiff
Margie Slagle, #0082217
Deana Taylor*
James Charles Kinsman*
Alex Havlin*
Legal Interns
Ohio Justice & Policy Center
215 East Ninth Street, Suite 601
Cincinnati, Ohio 45202
(513) 421-1108 ext. 17
dsingleton@ohiojpc.org
mslagle@ohiojpc.org
taylord7@mymail.nku.edu
kinsmanc1@mymail.nku.edu
havlina1@mymail.nku.edu

**CERTIFICATE OF SERVICE**

I certify that on March 1, 2012, a copy of the foregoing Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Additionally, I served a copy of the foregoing Motion by email on Assistant Attorney General Rich Cholar.

/s/ David A. Singleton
David A. Singleton

* Authorized to assist in the representation of Plaintiffs pursuant to S.D. Ohio Civ. R. 83.6.