IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, ET AL., | : | Case No. 2:12-CV-188 |
| Plaintiff, | : | District Judge Sargus |
| v. | : | Magistrate Judge Kemp |
| JAMES HAAS, ET AL., | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Defendants, by and through counsel, oppose Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2). Defendants submit that good cause exists to deny Plaintiff's Motion, as set forth more particularly below.

**I.      INTRODUCTION**

On November 28, 2005, Mr. Doe after being advised of all Constitutional Rights waived his right to a jury trial and plead guilty to and was convicted of six counts of Unlawful Sexual Conduct with a Minor; three counts of Sexual Imposition and one count of Rape (By Force). The offenses involved two sisters, whose ages ranged from thirteen to sixteen years of age, who were parishioners at a church where Mr. Doe, a thirty-five year old man, worked with the church youth group and would fill in as a pastor.

Mr. Doe was sentenced to seven years of incarceration and five years of post-release control (PRC). He was also adjudicated a sexually oriented offender and was ordered to register as a sex offender for ten years. Mr. Doe was release from prison on January 24, 2012 and began his five years of "PRC". Mr. Doe has four children, thee boys and one girl. The sons range in age from eight to seventeen, while the daughter fifteen years old. The age

of the daughter fits the victim profile as Mr. Doe's victims were between the ages of thirteen and sixteen.

## II.     BACKGROUND

While Mr. Doe is on PRC he is still under the supervision of the Adult Parole Authority "APA". The goal of PRC is to continue the rehabilitation process of the offender, work on re-uniting the offender with his family, re-integrating the offender with society as well as protecting the population at large and in this case minor children from sex offenders such as Mr. Doe. As such, the APA is shouldered with the responsibility of setting certain conditions for Mr. Doe's supervision.

### A.  Contact with his minor children

Initially, it was determined that a condition of his supervision must include a no-contact provision of Mr. Doe with his minor children. After reviewing the no contact provision, the APA agreed to allow Mr. Doe to have telephone contact with his minor children as well as contact with his minor children during open church on Sundays.

As an avenue in resolving the current dispute, The APA has offered to allow Mr. Doe to have visitation with his minor children on the conditions that those visits are supervised by a neutral qualified monitor and that Mr. Doe enroll in a certified sex offender program. However, Mr. Doe refuses to enter into a sex offender program and as such the APA cannot permit supervised visitation.

Supervised visitation may not last during the entire pendency of Mr. Doe's PRC. However, Mr. Doe's compliance with the terms and conditions of his supervision will ultimately have an impact on all decisions made during his PRC.

**B. Residing in the family home**

The APA has refused to allow Mr. Doe to return to the family home to reside with his wife and their four minor children. Mr. Doe plead guilty to and was convicted of horrible crimes against two minor sisters whose ages ranged from thirteen to sixteen. Mr. Doe has a fifteen year old minor daughter who resides in the family home that fits the victim profile. Although there in not any evidence to suggest that Mr. Doe sexually abused any of his minor children prior to his incarceration, none of his minor children fit the victim profile at that time. Seven years later, his daughter is in the same age group as the two victims. Of importance it is anticipated that his daughter will be inviting acquaintances of her same age into the family home.

The APA has a duty to protect the community and the all minor children in that community. Mr. Doe has not provided the APA with any reason to suggest that he is <u>not</u> a threat to his family or the public at this time. Rather he is raising red flags to the opposite in that he refuses to enter into to a sex offender program and he refuses accept responsibility for his actions. In fact, Mr. Doe has been charged with three counts of perjury in state court due to his attempts to assert his innocence after pleading guilty to these horrible charges.

Once again, this restriction may not last during the entire pendency of Mr. Doe's PRC, however his compliance with the terms and conditions of his supervision will certainly have an impact on the decision making process.

**III. LAW AND ARGUMENT**

    **A. Injunctions**

Fed. R. Civ. P. 65 governs preliminary injunctions and temporary restraining orders. A temporary restraining order may be granted only if the following are met:

> (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable

3

>injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b).

An injunction decree is regarded as an extraordinary remedy and should not be granted routinely. *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). District courts assess four factors in analyzing a preliminary injunction issue: 1) whether the plaintiff has a strong likelihood of succeeding on the merits, 2) whether the plaintiff will suffer irreparable injury absent the injunction, 3) whether issuing the injunction will cause substantial harm to others, and 4) whether the public interest will be furthered by the issuance of the injunction. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.1997). Defendants submit that Plaintiff is not entitled to injunctive relief for the following two reasons: 1) Plaintiff has failed to show that he is likely to succeed on the merits of his claim, and 2) Plaintiff will not suffer irreparable injury absent the injunction.

### B. Plaintiff has failed to show a likelihood of success on the merits

The Defendants have not violated Plaintiff's fundamental rights. Valid parole conditions must be "directly related to advancing the individual's rehabilitation and to protect the public from recidivism." *U.S v. Ritter,* 118 F.3d 503,505 (6th Cir. 1997). The APA has narrowly tailored Mr. Doe's conditions of supervision with the goals to further his rehabilitation and to protect the public. The fact of the matter is the Plaintiff will not accept responsibility for his actions and enroll in a sex offender program, which would begin the process of family re-unification.

4

1. **The conditions of supervision involving contact with his children and the prohibition of residing in the family home does not violate any fundamental right.**

The APA is permitting Mr. Doe to have contact with his children at church and via telephone. The only impediment to Mr. Doe having supervised visitation is his failure to enroll in a sex offender program. Once Mr. Doe enrolls into the program, he can begin supervised visitation with his minor children. The APA has even located two agencies in Central Ohio that perform such a service. Not only would the participation in a sex offender program assist in the rehabilitation of the Plaintiff, supervised visits would protect the minor children, especially the daughter, who fits the victim profile. These conditions are narrowly tailored.

At the present time, the APA is not willing to let a convicted sex offender reside in the family home where his minor daughter, as well as foreseeable same age friends, fits the victim profile. Mr. Doe will not enter into a sex offender program and has not established any level of trust to assure the APA that he is not a danger to his minor daughter or any other minor female that may enter the residence for the purpose of visiting one of the minor children. Mr. Doe's refusal to accept responsibility for his actions and refusal to enter into a sex offender program further support the decision of the APA.

Although the following cases involve prisoners, the application of the law is analogous to the situation presently before this court. In *Odenwalt, et al., v. Gillis, et al.,* 327 F. Supp. 2d 502; 2004 U.S. Dist. Lexis 14380 (Middle District of Pennsylvania), attached hereto as Exhibit A, the court set forth a comprehensive analysis of whether restrictions on visitation privileges was a violation of constitutional rights and relied heavily on *Overton v. Bazzetta,* 539 U.S. 126, 156 L. Ed. 2d 162, 123 S. Ct. 2162 (2003), *Wirsching v. Colorado,* 360

F.3d 1191, 1199 (10th Cir. 2004) and *Turner v. Safley,* 482 U.S. 78, 84, 89, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987) in their decision. The following is an excerpt from *Gillis*:

> "In *Wirsching v. Colorado, infra,* a convicted a sex offender filed a *§ 1983* civil rights action challenging a prison regulation which denied him all visitation rights with his minor daughter [5]. In that case, the United States Court of Appeals for the Tenth Circuit held that the regulation was not violative of the plaintiff's *First*, *Fourteenth* or *Eighth Amendment* rights. In so holding, the court addressed each of the factors set forth in *Turner* and discussed in *Overton*.
>
> 5  The policy at issue in *Wirsching* read as follows:
>
>   Visitors will be excluded from the visiting list with authorization from the Administrative Head if they:
>
>   a. Are the victim of the sex offender they are attempting to visit, except under circumstances approved in advance and in writing by the sex offender treatment staff;
>
>     b. Are under the age of eighteen (18) visiting an offender who has been convicted at any time of sexual assault on a child, incest, or aggravated incest unless approved in advance and in writing by the sex offender treatment staff;
>
>     c. Are victims of the offender or are children under the age of eighteen (18) years of age, if such visits would be contrary to the rehabilitation of the offender as documented by mental health staff who will evaluate the offender and make recommendations regarding visits which may be detrimental to the offender's rehabilitation.
>
>   d. Sex offenders who have perpetrated against children shall not loiter near children in the visiting room or participate in any volunteer activity that involves contact with children except under circumstances approved in advance and in writing by the sex offender treatment staff.
>
> *Wirsching, 360 F.3d at 1194-95*.
>
>   Initially, with respect to the first *Turner* inquiry, the court found that a rational connection existed between the prison regulation and the legitimate governmental interest advanced by prison officials for the regulation, in that the regulation was implemented for the protection of the children themselves and to further the rehabilitation of convicted sex offenders. Although the plaintiff argued that the record contained no evidence that he had ever harmed his daughter and cited to decisions acknowledging the rehabilitation effect of prisoners' visits with family members [6], the court found that the plaintiff's arguments ignored the substantial deference due "to the professional judgment of prison administrators, who bear significant

responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Wirsching, 360 F.3d at 1200* (citing *Overton, 539 U.S. at 132*). The court further recognized that "the burden ... is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.*

6   See *Ramos v. Lamm, 639 F.2d 559, 581 (10th Cir. 1981).*

As to the second *Turner* inquiry, the court found that the reasonableness of the regulation was supported by the fact prison officials allowed the plaintiff to contact his children by letter and telephone. In doing so, the court found that alternatives "need not be ideal ... they need only be available." *Id.* (citing *Overton, 539 U.S. at 135*).

With respect to the third and fourth *Turner* inquiries, (i.e., the effect within the prison of accommodating the asserted right and the availability of alternatives that would accommodate the prisoner), the court gave "little weight" to the plaintiff's arguments, again citing to the deference afforded to prison officials. *Id. at 1201* (citing *Overton, 539 U.S. at 135*).

In addressing the plaintiff's arguments, the court noted that

"we do not discount the importance of [the plaintiff's] relationship with his children. Even inside the prison walls, that relationship is generally deserving of some form of protection. The complete ban upon Mr. Wirsching's visits with his children is indeed a harsh restriction, significantly more severe than the ban on family visits upheld in *Overton*. Prison officials should be careful to ensure that restrictions upon visitation with a prisoner's children are justified by the circumstances, and they should seriously consider less draconian restrictions-such as closely monitored, noncontact visitation.

* * *

Nevertheless, we are aware that the treatment of sex offenders, like many other aspects of prison administration, presents substantial difficulties. On this record we conclude that ... the defendants did not violate Mr. Wirsching's *First* and *Fourteenth Amendment* rights.

*id.*

Applying the analyses of the *Turner* factors in *Overton* and *Wirsching* to the case at hand, the court holds that the prison regulation in the instant case, which only places restrictions on the plaintiff's contact visitations with his children, is not violative of either the *Eighth* or *Fourteenth Amendments*.

Initially, as set forth above, there are clearly legitimate penological interests in disallowing sex offenders from having contact with minors, whether it be their own children or otherwise. *See Overton, 539 U.S. at 133* ("protecting children from harm is also a legitimate goal."). Although the plaintiff alleges that he had full custody of his children before his incarceration and that they were never removed after his arrest because he

> did not pose any harm to them, this again does [*509] not take into account the substantial deference due "to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Wirsching, 360 F.3d at 1200* (citations omitted)."

*Gillis* at 11-16.

By applying the analysis of the above cases, it is clear that the conditions of supervision are narrowly tailored to serve their dual goals of rehabilitation and protections.

### 2. The restriction prohibiting contact with minors is not constitutionally vague.

Mr. Doe is subject to the condition that he is prohibiting from having contact with minors without his parole officer's permission. This condition of supervision is not overbroad as it protects the public from further crimes, adequately deters criminal conduct and aids in rehabilitation. It does not involve a greater depravation of liberty than necessary to accomplish those goals.

*U.S. v. Oliphant,* 2012 U.S. App. Lexis 152 at *4, *5 (5th Cir.), attached as Exhibit B, the Court held:

> "…restricting Oliphant's contact with all minors is indeed rationally related to the need to protect the public. Moreover, "Congress has made clear that children, including [the defendant's], are members of the public it seeks to protect by permitting a district court to impose appropriate conditions on terms of supervised release." *United States v. Rodriguez, 558 F.3d 408, 417 (5th Cir. 2009)*. We thus conclude that Oliphant's association restrictions, which allow for contact with minors with the probation officer's prior permission, are not overly broad and, as such, his liberty interests have not been deprived in a manner greater than necessary to protect the public and adequately deter criminal conduct. *See id. at 417-18*. Again, there was no abuse of discretion on the part of the district court in imposing these association restrictions."

Based upon the above, it is clear that Mr. Doe's prohibition involving contact with minors is lawful and valid.

### 3. The Defendants have not violated Plaintiffs right to freedom of association nor has Mr. Doe's property been taken from him.

There is nothing in Mr. Doe's conditions of supervision that prohibit him from being married to his wife. He simply cannot do it in the family home where his minor children reside. There has not been any evidence to suggest that Mr. Doe is not a risk to his minor children other than self-serving statements. As previously stated, the condition is narrowly tailored to service its dual purpose of rehabilitating the offender and protecting the public.

As far as the family home is concerned, Mr. Doe still owns the home as it has not been taken from him. His wife, children and parents continue to reside in the home. Classifying his restriction from residing in the family home where his minor children reside as a "taking" is simply without merit.

### 4. The Defendants have not denied Mr. Doe procedural due process.

The Plaintiff's rely heavily on *Goings v. Court Svcs, et al.,* 786 F.Supp.2d 48, 73 (D.D.C 2011). The facts of *Goings* are clearly distinguishable to the facts here. In *Goings*, the Plaintiff was twenty-three years old and the alleged victim was sixteen. It was a consensual sexual relationship. Further, the Plaintiff was unaware that he was charged with sexual battery until thirteen years later.

The above facts are a far cry from those in the present case where Mr. Doe, a thirty-five year old man, forcibly raped one sixteen year old victim and had a sexual relationship with the other victim for over a year beginning when the victim was thirteen. Common sense dictates why the APA set forth conditions of supervision involving minors, including his children. As such, Mr. Doe's was not denied procedural due process.

**C.     Plaintiff has failed to demonstrate that he will suffer irreparable injury absent the injunction.**

Mr. Doe asserts that every moment that he is forced to be away from his family is one that is lost. In fact, Mr. Doe does have contact with his children via telephone and during open church. If Mr. Doe agreed to participate in a sex offender program, he would be able to begin the process of establishing supervised visits with his children.

The current conditions or Mr. Doe's supervision are not set in stone for the entire five years. Depending on Mr. Doe's level of compliance and cooperation, these terms could potentially change. However, Mr. Doe is not will to accept responsibility for his actions and begin the process of rehabilitation and the eventual re-unification with his family.

The terms of Mr. Doe's supervision have been narrowly tailored and the parole conditions are directly related to advancing the individual's rehabilitation and to protect the public from recidivism. As such Mr. Doe has not satisfied his burden of demonstrating that he will suffer an irreparable injury.

### III. CONCLUSION

Plaintiffs have not demonstrated a strong likelihood of success on the merits of their Complaint or Motion for injunctive relief, nor have they shown that they will suffer irreparable harm. Accordingly, the Court should deny Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 2).

Respectfully submitted,

MICHAEL DeWINE
Ohio Attorney General

/s/ Dustin J. Calhoun
DUSTIN J. CALHOUN (0072429)
Assistant Attorney General
Criminal Justice Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233
(614) 728-9327 FAX
dustin.calhoun@ohioattorneygeneral.gov
TRIAL COUNSEL FOR DEFENDANTS

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **Defendants' Memorandum in Opposition to Plaintiff's Temporary Restraining Order** has been electronically filed with the Court on March 7, 2012. Notice of this filing will be sent to all registered parties by operation of the Court's CM/ECF filing system. Parties may access this filing through that system.

/s/ Dustin J. Calhoun
DUSTIN J. CALHOUN (0072429)
Assistant Attorney General