**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE** and **JANE DOE** | : | Case No. 2:12-cv-00188 |
| Plaintiffs, | : | Judge Sargus |
| | : | Magistrate Judge Kemp |
| v. | : | |
| **JAMES HAAS**, et al., | : | **PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |
| | : | |
| Defendants. | : | |

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Defendants concede there is "no evidence that Mr. Doe has abused any of his children in the past." (Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order, Doc. 12, at 3). The sole issue is whether the APA can banish him from his home and children based on their fear that he might offend against his daughter because she is the same gender and roughly the same age as his victims.[1]  For the reasons discussed below, Plaintiffs are likely to succeed on the merits.

### A. Defendants Have No Answer to Plaintiffs' Procedural Due Process Claim.

Defendants claim that Mr. Doe was not denied procedural due process because "[c]ommon sense dictates why the APA set forth conditions of supervision involving minors, including his children." (Doc. 12, at 3). Defendants are wrong. Defendants' "common sense" cannot possibly be construed as a meaningful opportunity to be heard.

---

[1] During the March 6, 2012 conference call with the court, Defendants conceded that the offense itself and the victim profile were the sole reasons for barring Mr. Doe from his home.

The troubling question is what procedure is due before the APA can deprive Mr. Doe of his fundamental right to parent. In the context of a deprivation by child protection agencies, the state must present "some reasonable and articulable evidence giving rise to a reasonable suspicion" that a child is in imminent danger of abuse to the court. *Croft v. Westmoreland County Children & Youth Serv.,* 103 F.3d 1123, 1126 (3d Cir.1997). For a deprivation in the context of federal conditions of supervised release, the trial court must carefully consider statutory criteria and tailor the conditions to the individual. *United States v. Ritter*, 118 F.3d 503, 505 (6th Cir. 1997). And the court's factual findings and reasons for imposing conditions are subject to appellate review. *Id*. at 504.

Here, Mr. Doe was afforded no due process before the state deprived him of his rights. But even if he had been afforded a hearing, Defendants cannot meet the standard imposed in children's services cases because the Licking County Children's Services has twice investigated Mr. Doe and concluded there is no evidence that his daughter is in danger. APA cannot meet the standards imposed on federal trial courts because Mr. Doe's trial court concluded he was not likely to re-offend, and APA's own assessments confirm that Mr. Doe has a very low re-offense risk. Other than their "common sense," the Defendants have articulated no particularized reason why they banished Mr. Doe from his home and children without any due process.

**B. Defendants Wrongly Attempt to Shift the Burden to Mr. Doe.**

Rather than offer particularized information that Mr. Doe poses a danger to his daughter, which Defendants are unable to provide, Defendants attempt to shift the burden to Mr. Doe by

2

requiring him to prove he will not harm her.[2]  Specifically, Defendants state:  "Mr. Doe has not provided the APA with any reason to suggest that he is <u>not</u> a threat to his family or the public at this time." (Doc. 12, at 3) (emphasis in original).  Defendants have it backwards.  It is their burden to demonstrate that Mr. Doe poses a danger to his daughter, not the other way around.

Defendants do not dispute Mr. Doe's fundamental right to parent his children and associate with his spouse.  Accordingly, where, as here, "the claimed right is a fundamental right entitled to protection under the Due Process Clause, . . . the burden shifts to the government to show that its encroachment upon the right 'is narrowly tailored to serve a compelling [governmental] interest.'" *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2302 (1997) (quoting *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439 (1993)).

Thus, it is inappropriate to shift the burden to Mr. Doe on the issue of dangerousness.  Defendants are the ones who have violated Mr. Doe's fundamental rights by prohibiting him from living at home with his family.  Therefore, Defendants must bear the burden of proving why it is necessary to banish Mr. Doe from this home.  They cannot do so where, as here, they lack specific information that he poses a threat to his daughter.

Nor is it appropriate for Defendants to require Mr. Doe to earn back the fundamental rights they have unconstitutionally taken from him.    Yet this is precisely what Defendants are attempting to do.  In their response to Plaintiffs' Motion for Temporary Restraining Order, Defendants state that Mr. Doe must first "accept responsibility for his actions and enroll in a sex offender program . . . [to] begin the process of family reunification."  (Doc. 12, at 4).  Not only does this argument unfairly shift the burden to Mr. Doe, but it is also disingenuous.

---

[2] Defendants also claim that prohibiting Mr. Doe from living in his home is also necessary to protect "acquaintances of [the daughter's] same age" who may visit the home.  (Doc. 12, at 3). As will be explained below, this concern can be managed without barring Mr. Doe from living in his home.

Essentially, Defendants have attempted to delay indefinitely Mr. Doe's return home by requiring him to first complete treatment as a condition precedent to reunifying with his family. Defendants acknowledge that Mr. Doe's pending criminal charges prohibit him from participating in sex offender treatment at this time.[3]  Thus, in addition to shifting the burden to Mr. Doe on the issue of dangerousness, it is unfair to condition his return home on his enrolling in a treatment program Defendants know he will not be able to complete in the foreseeable future.

### C.  The PRC Condition At Issue Here is Not Narrowly Tailored.

Defendants admit that Mr. Doe has a very low re-offense risk and has never offended against his children. Even Mr. Doe's Supervision Accountability Plan concluded that Mr. Doe's family interaction needed no improvement. (Supervision Accountability Plan, Attached as Exhibit A). Yet Defendants unilaterally banished him from his home and all contact with his children upon his release from prison. That condition, as originally imposed, is arbitrary, capricious, and unreasonable. Moreover this condition violates Defendants' reentry policies. (Reentry Supervision Release Process, 101-PLA-01) (available online at http://www.drc.ohio.gov/web/drc_policies/drc_policies.htm). Specifically, placement in his home "shall not be rejected unless the parole officer establishes through the investigation that … the offender's placement would pose a ***clear danger*** to the offender or others." *Id*. at p. 5 (emphasis added).

---

[3] If Mr. Doe were to enroll in treatment, one of the first questions he would be asked is whether he committed the crimes of which he was convicted. During the March 6, 2012 conference calls, Defendants acknowledged that Mr. Doe cannot answer that question because he faces perjury charges for either lying when he pled guilty to the crimes under oath or lying when he submitted a sworn affidavit protesting his innocence from prison. If he admitted guilt, then he would be admitting that he perjured himself in his affidavit. If he denied guilt, then he would be admitting that he perjured himself during his plea hearing.

4

Defendants have failed to articulate any particularized facts to suggest that Mr. Doe is a clear danger to his children.  Instead, they attempt to defend their actions after-the-fact by mandating treatment for Mr. Doe, allowing Mr. Doe to have contact with his children at church and via telephone, and claiming their concern is for the daughter's friends.  And they still refuse to allow Mr. Doe to visit his sons, again without any specific facts to support their actions. Even these conditions are capricious, and unreasonable.

Defendants' belated attempts to justify depriving Mr. Doe of his fundamental rights, especially their new claim that sex offender treatment is a prerequisite to visits with his children, are disingenuous at best.  Although treatment is mandated for medium-high and high risk offenders, Mr. Doe does not fall into that category. (See Sex Offender Services, 67-MNH-12, p. 3; Sex Offender Supervision, 103-SPS-02, p. 4) (available online at http://www.drc.ohio.gov/web/drc_policies/drc_policies.htm).  More importantly, offenders must admit to the sex offense to be eligible for treatment, (see Sex Offender Services, 67-MNH-12, p. 3), and if Mr. Doe fails to participate in or successfully complete treatment, he will be subject to sanctions.  *Id.* at p. 6.  This sudden urgency for treatment is contrary to Defendant's policies and virtually guarantees that Mr. Doe will violate that condition.

Equally disingenuous is Defendants' new-found concern for his daughter's friends.  Mr. Doe's special condition already prohibits any contact with minors without pre-approval.  This condition applies to any minor friends his children may invite to the home.  Before allowing his daughter to invite friends to their home, Mr. Doe must seek permission from Defendant Haas.  Otherwise, he has violated his conditions and is subject to sanctions.

Ironically, Defendants preferred that Mr. Doe live under a bridge instead of sending him home.  If Mr. Doe were such a high risk to the community, it is unclear how having him

5

homeless, sleeping under a bridge, and wandering the streets protects the community, ensures his safety, or promotes his rehabilitation.

Moreover, APA could impose a more narrowly tailored condition to ensure his daughter's safety. For example, APA could require Mr. Doe to undergo periodic polygraphs, which would serve the dual purposes of deterring him from committing future offenses and verifying that he is not abusing his daughter. Additionally, Defendant Haas could periodically ask Mr. Doe's fifteen-year-old daughter whether Mr. Doe has engaged in any inappropriate contact. Instead, Defendants continue to banish Mr. Doe from his home and children in violation of his fundamental rights to familial associations and to parent.

### D. The Cases Defendants Cite to are Inapposite.

Defendants rely on *Odenwalt, et al., v. Gillis*, et. al., 327 F.Supp.2d 502 (M.D. Penn. 2004) for the proposition that the state can bar Mr. Doe from his home based solely on the nature of his offense and the fact that his daughter, whom there is no evidence he has ever assaulted, fits the victim profile. Defendants' reliance on *Odenwalt*, and the cases cited therein, is misplaced.

In *Odenwalt*, the court upheld a prison regulation forbidding an inmate who had been convicted of sexually assaulting a minor, from visiting with his daughter, whom he had not sexually assaulted. But because the issue was one of prison management, the court applied the standard set forth in *Turner v. Safley*, 482 U.S. 78, 84, 89, 107 S.Ct. 2254 (1987). As the United States Supreme Court has explained, the *Turner* standard is highly deferential to prison officials in light of the unique challenges in operating corrections facilities. *Turner*, 482 U.S. at 89, 107 S.Ct. 2254; *Overton v. Bazzetta*, 539 U.S. 126, 135,123 S.Ct. 2162 ("we are 'particularly deferential' to prison administrators' regulatory judgments") (quoting *Turner,* 482 U.S. at 90, 107 S.Ct. 2254).

Unlike *Odenwalt*, this case does not involve the management of a prison. The special considerations at issue in prison simply do not apply here. Therefore, Defendants wrongly claim that *Odenwalt* is "analogous to the situation presently before the court." (Doc. 12 at 5).

Far more instructive are cases where courts have explicitly wrestled with the question of whether a parent may be prohibited from living with his or her children due to a sex offense conviction, such as *United States v. Largo*. No. CR 09–3447 JB, 2011 WL 6829595, (D.N.M 2011) (Attached as Exhibit B). In *Largo*, the government asked the court to impose a no contact order that included Largo's children. *Id*. at * 3. The government argued that the "condition was appropriate, because the [female] victim in this case was eleven-years old and is a family member, which means that Largo's daughters, who are thirteen- and eleven-years old, could be at risk." *Id*. at *6. After expressing concerns for the lack of a sufficient basis for the order, the court held that the government "has not established, on the record before the court, that there are compelling reasons to justify interfering with Largo's liberty interest in his familial relationship with his children." *Id.* at *9. *See also United States v. Smith,* 606 F.3d 1270, 1283 (10th Cir. 2010) (concluding that "special conditions that interfere with the right of familial association can do so only in compelling circumstances."); *United States v. Voelker*, 489 F.3d 139, 154 (3d Cir. 2007) (advising that "courts should proceed cautiously in imposing any condition that impacts parental rights absent sufficiently reliable supporting evidence"); *United States v. Loy*, 237 F.3d 251, 256 (3d Cir. 2001) (explaining that during supervised release, convicted pedophiles may have restrictions placed on their parental rights if there is sufficient evidence that the children are in danger from the parent); *Washington State v. Letourneau*, 100 Wash. App. 424, 997 P.2d 436, 442 (2000) (striking a no contact order to exclude the defendant's own children because the "general observation that many offenders who molest children unrelated to them later molest

7

their own biological children, without more, is an insufficient basis for State interference with fundamental parenting rights").

### E.  Banishing Mr. Doe from his Home is a Taking.

Defendants claim that Mr. Doe's substantive property rights have not been impaired because he still owns the home.  Defendants are wrong.  Ohio's Constitution provides that all citizens have certain inalienable rights which includes, acquiring, ***possessing***, and protecting property.  Ohio Const. Art. I, § 1 (emphasis added).  Possession of acquired property is thus a fundamental – indeed inalienable – right protected by the Ohio Constitution.  *See Nasal v. Dover*, 169 Ohio App. 3d 262 (2006) (holding that the sex offender residency restriction that prohibited Dover from living in his home deprived him of a substantive property right).  Prohibiting Mr. Doe from his home is a taking, and to the extent that he is forced to incur rent payments, the APA should compensate him.

### II. PLAINTIFFS WILL BE IRREPARABLY HARMED IF INJUNCTIVE RELIEF IS NOT ORDERED.

Defendants assert there is no irreparable harm because they have graciously permitted Mr. Doe to call his children and have contact with them at church.  (Doc. 12, at 10).  This does not refute the showing of irreparable harm.  Mr. Doe is still banished from his home and deprived of his right to be a father and husband.  These minimal contacts are not a substitute for being present at the dinner table, helping with homework, and talking about their daily activities, issues, and problems.  Mr. Doe will miss the opportunity to share in the upbringing of his children with his wife, which is one of the most important aspects of family life.  The deprivation of a fundamental right, even for minimal periods of time constitutes irreparable harm.  *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976).

### III. Conclusion

For the foregoing reasons, this Court should grant the Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

/s/ David A. Singleton
David A. Singleton, #007456
Trial Attorney
Marguerite Slagle, #0082217
Deana Taylor*
James Charles Kinsman*
Alex Havlin*
Thomas Schulman*
Co-Counsel
Ohio Justice & Policy Center
215 East Ninth Street, Suite 601
Cincinnati, Ohio 45202
(513) 421-1108 ext. 20
dsingleton@ohiojpc.org
mslagle@ohiojpc.org
taylord7@mymail.nku.edu
kinsmanc1@mymail.nku.edu
havlina1@mymail.nku.edu
tom.r.schulman@gmail.com

## CERTIFICATE OF SERVICE

I certify that on March 13, 2012, a copy of the foregoing Plaintiffs' Reply to Defendants Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system.

/s/ David A. Singleton
David A. Singleton

* Authorized to assist in the representation of Plaintiffs pursuant to S.D. Ohio Civ. R. 83.6.

9