

PLAINTIFF'S EXHIBIT
1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, et al., | : | Case No. 2:12-cv-188 |
| | : | Judge Sargus |
| Plaintiffs, | : | Magistrate Judge Kemp |
| v. | : | |
| JAMES HAAS et al., | : | |
| Defendants. | : | |

## SUPPLEMENTAL DECLARATION OF SUSAN ULLMAN

I, Susan Ullman, being of sound mind and with personal knowledge of the facts, do hereby make this declaration under penalty of perjury, pursuant to 28 U.S.C 1746(2), this 2nd day of April, 2012.

1. I have read the transcript of the testimony I gave in the above-captioned case on March 16, 2012.

2. I have also read the portions of the transcript, at pages 169-170 and 179-180, where the court stated its belief that I had recommended a gradual process for returning Mr. Doe to the home where his wife and children live.

3. The expert report I wrote prior to the hearing is attached as Exhibit A to this declaration. It is my understanding that Mr. Calhoun, counsel for defendants, has a copy of this report and was referring to it during his cross-examination of me at the hearing.

4. It is my opinion today, as it was when I wrote my report and when I testified on March 16th, that Mr. Doe should be immediately allowed to return home to live with his wife, children and parents provided that one of the adults in the home supervises him when he is around his children. In other words, Mr. Doe should not be left in his home alone with his

children, at least until he has taken and passed several polygraphs.

5. At the time I testified I thought I had clearly expressed the above opinion to the court. For example, at page 124 of the transcript, Ms. Taylor asked: "What are your recommendations about living at home, about Mr. Doe living at home with his children, his family?" I responded, "Again, I believe that he should at least initially have supervision whenever he is around the children. I also believe he should be out of the home or other children should not be permitted to visit the home while Mr. Doe is in the home. I believe he should take polygraphs every six-to-eight months." In hindsight, I may not have been as clear as I could have been in expressing what the timing of Mr. Doe's return to the home should be. But implicit in this answer I gave Ms. Taylor is that Mr. Doe should be allowed to return home immediately.

6. Also during cross examination, at pages 141-142 of the transcript, Mr. Calhoun stated, "Now you testified that you would like to see him back in the family home," to which I replied, "That's correct." I then went on to explain, in response to Mr. Calhoun's question, that Mr. Doe's wife and parents should monitor him inside the home.

7. And on redirect, Ms. Taylor, referring to the fact that Mr. Doe is in a "holding pattern" with treatment because of his pending perjury charges, asked at page 142 of the transcript: "Are you suggesting that he should not go home until his perjury case is resolved?" I responded: "No, that's not my suggestion. My suggestion is he should go home because I don't know how long it's going to take to resolve [the perjury] case. I don't know what the future holds for him, and right now he very much needs the support of his family, and I understand his children very much want him in the home."

8. I think the confusion over my testimony stems from my answers to the court's

2

questions at page 143 of the transcript. Specifically the court asked: "If you were to tell me your opinion of what you would recommend, and we didn't have the perjury charge looming as an impediment, I assume from your testimony you would say you would want him to enroll in some type of counseling or treatment program?" I responded, "I would." The court then followed up, "Supervision visitation to start, pretty much immediately[?]" I replied, "That's correct." The court then asked, "The family reunification in a residence would depend on those first two steps moving along and, as the probation officer said, some trust being established?" I answered, "That's correct."

9. As reflected at pages 169 and 170 of the transcript, the court construed my answers to its questions as my being in favor of a "gradual process," as opposed to an immediate one, for returning Mr. Doe to his family's home.

10. I did not mean to suggest to the court, as my answers in response to its questions imply, that Mr. Doe should return home only after he enrolls in treatment and begins supervised visitation outside of the home. When I answered the court's questions I was focused on what would be an ideal progression towards family reunification in a generic case involving an offender who had been convicted of sexually assaulting an unrelated minor and sought to live at home with his under aged children. But that ideal progression in a generic case cannot apply here because Mr. Doe is not able to enroll in treatment at this time.

11. However, even though Mr. Doe is not able to participate in treatment at this time, I am confident in my recommendation that he be allowed to return home and live with his family immediately, based on my clinical assessment of him, during which I determined him to be a low risk to reoffend. Additionally, as I testified at trial, he passed a polygraph on the question of whether he ever offended against his children or is sexually aroused by them.

3

12. Finally, at the hearing it was brought to my attention that Mr. Doe had allegedly violated curfew as monitored by his GPS system. Although those allegations concerned me, I still believed that he should be allowed to go home provided that he is supervised at home by his wife and/or parents and that he take and pass periodic polygraphs. Since the hearing I have learned that Mr. Doe's GPS system had malfunctioned and that the alleged curfew violations did not occur. This development increases my confidence that Mr. Doe could safely return to his home.

13. In sum, Mr. Doe has been in the community since January 24, 2012. He has passed a polygraph on the question of whether he has sexually assaulted his children or is aroused by them. He has complied with his curfew. Based on my clinical assessment, Mr. Doe is a low risk to reoffend. In light of these facts, it is my opinion that Mr. Doe be allowed to return to his home now, provided that he is supervised around his children by his wife or his parents, and that he take and pass periodic polygraphs.

14. I declare under penalty of perjury that the foregoing is true and correct.

*Susan Ullman*
Susan Ullman, LISW-S