PLAINTIFF'S
EXHIBIT

I

172 F.3d 50 (Table), 1998 WL 939987 (C.A.6 (Tenn.))
**Unpublished Disposition**

Briefs and Other Related Documents
Judges and Attorneys
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

# UNITED STATES of America. Plaintiff-Appellee,
## v.
# Marvin R. WILSON, Defendant-Appellant.

No. 98-5373.
Dec. 22, 1998.

On Appeal from the United States District Court for the Eastern District of Tennessee.

**Before NELSON and NORRIS, Circuit Judges; GWIN, District Judge. FN\***

FN\* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

## OPINION

**PER CURIAM.**

*1 After pleading guilty to receiving child pornography in the United States mail, defendant Marvin Wilson was sentenced to twelve months of imprisonment and three years of supervised release. During supervised release, defendant will be subject to discretionary plethysmograph testing (which measures arousal response to child pornography), polygraph testing (to determine compliance with release conditions), and registry as a convicted sex offender in accordance with Tennessee law. Defendant challenges each of these special conditions as well as the admissibility for sentencing purposes of the plethysmograph and polygraph results that were included in defendant's presentence report. We conclude that the district court did not abuse its discretion in admitting the test results or in assigning the special release conditions and therefore affirm.

# I.

Defendant's unlawful conduct arose from four communications with an undercover postal inspector over a period of one-and-a-half years in which defendant sought to purchase a video depicting "a young girl 8 to 12" engaged in sexual activity. Defendant ordered such a video from the inspector and was arrested shortly after its receipt. Defendant pleaded guilty to one count of receiving child pornography in the United States mail in violation of 18 U.S.C. § 2252(a)(2) (1998). The district court ordered a psychological evaluation of defendant in response to a request by defendant's probation officer. The psycho-sexual assessment, performed by a doctorate-level psychologist and two masters-level counselors, consisted of a polygraph examination, a penile plethysmograph "to evaluate the presence or absence of deviant sexual arousal," an assessment of defendant's amenability to treatment, a mental diagnosis, an assessment of defendant's empathy and individual personality characteristics, and various recommendations for prognosis, treatment, and sentencing. The polygraph resulted in inconclusive results due to defendant's incessant coughing during the test. Despite defendant's attempt to "cognitively control his response," the plethysmograph concluded that defendant achieved peak arousal when viewing material depicting prepubescent girls, ages six to eleven. The probation officer included the majority of the information contained in defendant's psycho-sexual assessment in his Presentence Investigation Report (PSR).

The district court imposed a sentence that required a three-year period of supervised release during which defendant would be subject to the three special conditions mentioned previously.

# II.

## A.

We turn first to the district court's consideration of defendant's polygraph and plethysmograph results for sentencing purposes. This court reviews de novo the district court's determination of the proper legal standard for admission of sentencing evidence. *United States v. Smith,* 39 F.3d 119, 122 (6th Cir.1994). We review the district court's application of the correct standard to the facts for abuse of discretion. *United States v. Ritter,* 118 F.3d 502, 504 (6th Cir.1997).

*2 A district court may only consider sentencing evidence if there are "sufficient indicia of reliability to support its probable accuracy" U.S. Sentencing Guidelines Manual § 6A1.3(a) (1997). The "probable accuracy" standard is analogous to a "preponderance of the evidence standard," *United States v. Silverman,* 976 F.2d 1502, 1513 (6th Cir.1992) (en banc), and is applied in light of all available surrounding evidence. Furthermore, the "sufficient indicia of reliability" test is satisfied if other evidence corroborates the information at issue. *United States v. Herrera,* 928 F.2d 769, 773 (6th Cir.1991). A district court has "wide discretion ... in considering the evidence submitted at sentencing." *Silverman,* 976 F.2d at 1508.

In our view, the district court did not abuse its discretion in admitting the full presentence report. It is clear that the district court considered defendant's objections and determined that the report was sufficiently reliable to play a part in its analysis. Furthermore, the court stated that it viewed the report as but one of many sources of information concerning the defendant's character. Thus, although the district court did not specifically make findings as to the reliability of the report, its use of the findings as one factor guiding its imposition of a sentence did not constitute an abuse of discretion.

Moreover, although defendant points to several possible flaws in the CCS report and questions the scientific validity of polygraphs and plethysmographs, the standard under the Sentencing Guidelines is mere "probable accuracy." While the standards for accuracy in the scientific community and the test for the admissibility of scientific evidence set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)*, and *Frye v. United States, 293 F. 1013 (D.C.Cir.1923)*, are stricter than this sentencing standard, none of the cases or studies cited by defendant suggests that polygraphs and plethysmographs fail the probable accuracy test. Accordingly, we are unable to say that the district court abused its discretion in admitting the polygraph and plethysmograph results.

## B.

Even if polygraphs and plethysmographs are sufficiently reliable for sentencing purposes, defendant contends that the tests are so inaccurate that they constitute "unreasonable" special conditions of release. "Conditions of supervised release or probation must be upheld if they are reasonably related to the goals of probation, rehabilitation of the defendant, and the protection of the public." *United States v. Berridge, 74 F.3d 113, 118 (6th Cir.1996)*. This court "review[s] the district court's imposition of a special condition of supervised release only for abuse of discretion." *Ritter, 118 F.3d at 504*.

As a preliminary matter, the government argues that defendant's challenge to the special conditions concerning testing is not ripe because such tests are to be performed at the discretion of the probation officer. However, the fact that defendant has not yet been subjected to testing does not erase the fact that the court has ordered his sentence and that there exists the threat of testing upon his release from prison.

*3 Although the government suggests that defendant has waived any objection to the testing conditions because he failed to object at sentencing, his objection to the use of polygraphs and plethysmographs in the presentence report was sufficient to preserve his objection.

Defendant's claim fails under the "reasonableness" test used for special sentencing. The discretionary polygraphs and plethysmographs are tools to help the probation officer monitor defendant's rehabilitation and compliance with release conditions; the tests are not geared toward the collection of evidence for prosecution of possible future parole violations. The tests are not only reasonable but directly serve the penal system's twin goals of rehabilitation and protection of the public. Thus, the district court did not abuse its discretion in ordering defendant to submit to polygraphs and plethysmographs at the discretion of his probation officer.

Obviously, defendant retains the right to challenge the reliability of polygraph and plethysmograph tests should they be used in the future by the government as a basis for seeking revocation of his supervised release. It is conceivable that results of the tests may be deemed sufficiently reliable to serve as evidence that defendant has violated the conditions of his supervised release.

## C.

Both parties concede that the district court had the authority to order defendant to register as a sex offender pursuant to Tennessee law if that law so provides. Under Tennessee law, a convicted sexual offender released on probation "shall complete a TBI sexual offender registration/monitoring form and shall cause such form to be delivered to TBI headquarters in Nashville" T.C.A. § 40-39-103 (1998). A "sexual offender" is defined as "a person ... who is, or has been convicted, in a federal or military court of committing an act which would have constituted a sexual offense if it had been committed in this state." T.C.A. § 40-39-102(2) (1997). The Tennessee statute lists the crimes that constitute a "sexual offense," one of which is "sexual exploitation of a minor, under 39-17-1003," T.C.A. § 40-39-102(3), which, in turn, is defined as "to knowingly possess material that includes a minor engaged in ... [s]exual activity or [s]imulated sexual activity that is patently offensive" T.C.A. § 39-17-1003.

Because defendant was convicted of receiving child pornography through the United States mail, it is clear that he would also be guilty of possessing such material pursuant to T.C.A. § 39-17-1003. Defendant purposefully requested delivery of and received pornography featuring "a young girl 8 to 12." The district court was thus within its authority to impose upon defendant the duty to register as a sex offender pursuant to Tennessee law.

Even if defendant did not trigger the sex offender statute, however, it would be within the district court's discretion to require registration with Tennessee authorities as a condition of his release. The sole standard to be met under the Sentencing Guidelines is that a special release condition be "reasonable." Registration is not only a common requirement upon conditioned release of sex offenders, it also serves important public interests. We therefore conclude that the district court reasonably required defendant to register as a sex offender as a special condition of his release. The district court was also free to adopt as the procedure for execution of this special condition the procedure previously established by Tennessee statute.

## III.

*4 The sentence imposed by the district court is affirmed.

C.A.6 (Tenn.),1998.
U.S. v. Wilson
172 F.3d 50 (Table), 1998 WL 939987 (C.A.6 (Tenn.))
Unpublished Disposition