UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN DOE AND JANE DOE,

        **Plaintiffs,**

                                    **Case No. 2:12-cv-188**
   **v.**                              **JUDGE EDMUND SARGUS, JR.**
                                      **Magistrate Judge Terence P. Kemp**

**JAMES HAAS, et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the plaintiffs' application for a temporary restraining

order. For the reasons that follow, the application is **DENIED**. (Doc. No. 2.)

## I. BACKGROUND

On November 28, 2005, Mr. Doe pled guilty to and was convicted of six counts of

Unlawful Sexual Conduct with a Minor, three counts of Sexual Imposition and one count of

Rape By Force. The offenses involved two sisters, whose ages ranged from thirteen to sixteen

during the criminal conduct. The sisters were parishioners at a church where Mr. Doe, a

thirty-five year old man, worked with the church youth group and would fill in as a pastor. The

Does also utilized the sisters as babysitters. Some of the conduct of which Mr. Doe was

convicted occurred in his home.

Mr. Doe was sentenced to seven years of incarceration and five years of post release

control. He was also adjudicated a sexually oriented offender and was ordered to register as a

sex offender for ten years. Once incarcerated, Mr. Doe filed several appeals of his sentence,

requesting that his guilty plea be withdrawn and contending that he was not guilty of the crimes

to which he pled. Those appeals were all ultimately denied. The Licking County Prosecutor has

now charged Mr. Doe with perjury for either lying when he pled guilty or lying when he asked to

withdraw his plea. The trial on those charges is scheduled for June 27, 2012.[1]

During his time of incarceration, the Doe family stayed in close contact with Mr. Doe.

Mr. and Mrs. Doe have four children, three boys and a girl. Their three sons are ages seventeen,

thirteen and eight, and their daughter is fifteen. Mr. and Mrs. Doe own a home together in

Hebron, Ohio, where Mrs. Doe currently lives with their four children and Mr. Doe's parents. As

a condition of his post release control supervision, Mr. Doe is not allowed to have contact with

any minor children without permission, including his own children.

In September 2011, the Adult Parole Authority ("APA") began preparing for Mr. Doe's

return to the community. As part of that process, Mr. Doe had to complete forms showing where

he planned to live while on post release control. The APA requires parole officers to approve the

location. Mr. Doe listed the home where he resided with Mrs. Doe and their children before his

incarceration as where he intended to reside after his release from prison. Mr. Doe's parole

officer, Defendant James Haas, visited the home and spoke to Mrs. Doe. Officer Haas refused to

allow Mr. Doe to return to his home because of the presence of his minor children.

On January 24, 2012, Mr. Doe was released from prison and began serving his sentence

of five years of post release control. Since that time, Officer Haas approved Mr. Doe's

---

[1] "Federal courts may take judicial notice of proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) (citations omitted).

attendance at the family church as long as there is at least one adult serving as a buffer between him and his children and has permitted him to speak with his children on the telephone. More recently, the APA has also given Mr. Doe permission to have supervised visitation with his children in the presence of an approved neutral supervisor.

On February 29, 2012, the plaintiffs filed this action against Officer Haas, the Ohio Department of Rehabilitation and Corrections, the APA, and two of its administrative employees in their official capacities, alleging violations of their constitutional rights to live as husband and wife. The plaintiffs further alleged that Mr. Doe's constitutional rights to parent his children, to procedural due process, to just compensation for the taking of property, and to be free from laws that are unconstitutionally vague have all been violated by the defendants.

On March 1, 2012, the plaintiffs filed the motion for emergency injunctive relief that is currently before the Court. On that same day the Court held a conference pursuant to Local Rule 65.1. At that conference, the parties indicated that mediation may alleviate the need for emergency injunctive relief so the Court referred the case to mediation on March 2, 2012, before Magistrate Judge Norah McCann King. The Magistrate Judge held another mediation conference on March 6, 2012. Although some progress was made, the parties ultimately reached impasse.

On March 6, 2012, the Court held another telephone conference with the parties and scheduled a hearing on the plaintiffs' motion for a temporary restraining order. That hearing was held on March 16, 2012.

After the hearing, counsel for the plaintiffs requested permission to file a post-hearing brief, which the Court granted. The defendants were permitted to file a post-hearing brief following the plaintiffs' filing.

3

On March 30, 2012, the defendants filed a notice informing the Court of the results of an investigation into suspected violations of conditions of supervised release by Mr. Doe. (Doc. No. 26.) Specifically, during the injunctive relief hearing, the defendants presented evidence that the GPS monitoring of Mr. Doe indicated violations of his curfew and location. The investigation result reported in the defendants' notice showed that those violations were determined to be anomalies and not indicative of any violation on Mr. Doe's part.[2]

On April 3, 2012, the plaintiffs filed a notice with a supplemental declaration of the plaintiffs' expert, Susan Ullman, to "clarify" her testimony. (Doc. No. 27.) The notice was also titled alternatively as a motion to reopen the temporary restraining order hearing to allow Ms. Ullman to clarify her testimony.

The plaintiffs filed their post-hearing brief on April 11, 2012 (Doc. No. 30) and the defendants filed their brief on April 18, 2012 (Doc. No. 31). On April 19, 2012, the plaintiffs filed a reply brief in support of their post-hearing brief. (Doc. No. 32.)

## II. MOTION FOR TEMPORARY RESTRAINING ORDER

In their motion for a temporary restraining order, the plaintiffs move to have the defendants enjoined from prohibiting Mr. Doe from residing in his home with his wife, children, and parents. The plaintiffs argue that the post release control condition violates Mr. Doe's fundamental right to parent his children and to live together with his wife. They also argue that the condition is unconstitutionally vague, constitutes an unconstitutional taking of his property, and that the imposition of the condition violates his constitutional right to procedural due

---

[2]The Court commends the defendants for conducting such a timely investigation and for being forthcoming with the results.

process.

While the plaintiffs raise important constitutional issues, only the claim that the condition violates Mr. Doe's right to parent his children could result in the relief they request. That is, even if the Court were to find that the condition is unconstitutionally vague, that it violated his associational right to be with his wife or of notice and opportunity to be heard, or that it constituted a taking, but yet found that it did not violate his constitutional right to parent his children, the Court would not immediately place Mr. Doe back in his home. Consequently, the Court only addresses whether the post release control condition prohibiting Mr. Doe from residing in the family home violates his fundamental right to parent his children. The Court will determine the additional claims for relief in due course.

## A. Standard

Rule 65 of the Federal Rules of Civil Procedure permits a party to a suit to seek injunctive relief if he believes he will suffer irreparable harm or injury. The decision whether or not to issue a preliminary injunction falls within sound discretion of the district court. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). The trial court, however, should grant this extraordinary remedy only after it has carefully considered the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir.2000) (citing *McPherson v. Michigan High Sch.*

5

*Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*), quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). These four different considerations are not required elements of a conjunctive test but are rather factors to be balanced. *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985); *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative). Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are determinative of the issue. *DeLorean*, 755 F.2d at 1229.

## B. Relevant Evidence

The relevant evidence before the Court is derived from the evidence submitted on brief, including all of the supplemental and post-hearing briefing, and the testimony and evidence presented at the emergency injunctive relief hearing. At the hearing, the plaintiffs presented as witnesses Mrs. Doe and Susan Ullman. Ms. Ullman was presented as an expert in sex offenders and sex offender risk assessments. The defendants presented as witnesses the APA's Chair of the Parole Board Cynthia Mausser, Superintendent of the APA Michael Jackson, Parole Officer Haas, and Director of Sex Offender Services for the Ohio Department of Rehabilitation and Corrections David Barenson. Director Barenson was presented as an expert in sex offenders and rehabilitation of sex offenders.

Chair Mausser testified about the administration of sex offenders by the APA and the nature of post release control. She testified that all offenders convicted of the same crime as Mr. Doe would have a "no non-supervised contact with minors without permission of your parole

6

officer" condition imposed. She explained the rationale for such conditions as being the

protection of minors and protection of the offender from the temptation of new offenses. The

Court finds her testimony believable and informative.

Officer Haas explained that Licking County has two sex offense specialists with whom he

consults and implements Mr. Doe's post release control special conditions. He testified that the

three of them determined that the condition that Mr. Doe not be permitted any contact with

minors, including his own children, without preapproval of Officer Haas was appropriate.

Officer Haas is experienced at supervising sex offenders and treats Mr. Doe in a manner similar

to the numerous other sex offenders he supervises. Officer Haas testified that his goal, and the

APA's overriding goal, is to safely reintroduce Mr. Doe into the community and reunify him with

his family. Their goal is to not only keep the community safe but to keep Mr. Doe safe from any

potential violations by setting him up for success. Part of that plan is to keep Mr. Doe from

situations that would provide immediate opportunity for him to re-offend. To provide Mr. Doe

with the most fertile ground for success, Doe has been required to abide by certain post release

control conditions over a period of time to build trust between Doe and the APA, and hopefully

permit Doe to build trust within himself. These conditions include no contact with any minors

without prior permission, GPS monitoring[3], and counseling. The Court finds that Officer Haas

---

[3]Officer Haas testified about several indications from the GPS monitoring system that showed that Mr. Doe had violated his curfew. As the Court indicated *supra*, through their investigation, the defendants have discovered that the GPS monitoring violations were inaccurate and the Mr. Doe had not violated his curfew. The plaintiffs make much of the impact these possible violations had on the testimony of the witnesses. The Court, however, does rely on any testimony or conclusions drawn by any witness related to the possible violations. Instead, the Court views the lack of violations as Mr. Doe's initial compliance with his conditions of post release control.

provided truthful and credible testimony.

As to the sex offender counseling, all testimony was consistent that it is not an option for Mr. Doe because of the pending perjury charges. All sex offender treatment programs require the offender to accept responsibility for his actions, *i.e.*, admit that he committed the crimes of which he was convicted. If Mr. Doe did this, he would be admitting that he perjured himself in his affidavit. If he denied guilt, then he would be admitting that he perjured himself during his plea hearing. Thus, the Court accepts that Mr. Doe cannot currently enroll in sex offender counseling.

Officer Haas testified that reunification of Mr. Doe with his family is one of the goals of the post release control conditions. At the end of the hearing, counsel for the defendants informed the Court that the defendants would permit supervised visits and that they would discuss having those visits at two Franklin County locations that provide that type of service. Mr. Doe's counsel, however, informed the Court that the cost of these providers was prohibitive. Further, the plaintiffs were concerned that Mr. Doe could not engage in these visits because the service providers require Mr. Doe to be enrolled in counseling. In reply, the defendants agreed to in good faith discuss a method so that Mr. Doe could quickly begin supervised visits with his children.

Superintendent Jackson testified that it is a common condition of post release control that the offender cannot go near any minor without prior permission, even his own children. The Court finds his testimony credible.

The defendants' expert, Director Berenson, testified about tests used to determine the risk factors for sex offenders. Director Berenson testified that is was unreasonable for a sex offender like Mr. Doe to expect reunification with his family six weeks after being released from

8

prison. He explained that there are multiple factors that come into play when making the decision to permit a sex offender to reunite with his family, including a history of open and honest communication between the officer and the offender and numerous other checks and balances to ensure the safety of all involved. The Court finds Director Berenson qualified as an expert in the field of sex offenders and the rehabilitation of sex offenders and found his testimony credible.

With regard to the testimony of the plaintiffs' expert, Susan Ullman, the Court first finds that she is qualified as an expert in the field of sex offenders and sex offender risk assessment and that her testimony was credible. Ms. Ullman interviewed Mr. Doe and performed an evaluation of him to determine his potential to re-offend and to determine the level of risk he posed to his daughter. Ms. Ullman gave Mr. Doe a polygraph test to determine whether he has any sexual thoughts about his daughter and if he ever sexually abused her. Her conclusion was that he does not and has not. Because of the perjury charges against Mr. Doe, however, Ms. Ullman was not permitted to ask Mr. Doe if he accepted responsibility for his actions or to discuss with him the crimes of which he was convicted. Therefore, Ms. Ullman started with the assumption that Mr. Doe accepted responsibility for the crimes of which he was convicted. She indicated that if Mr. Doe did not take responsibility for his actions, her assessment would be "useless." (Transcript at 127.) Ms. Ullman testified that Mr. Doe's parents did not believe that Mr. Doe committed the crimes of which he was convicted. Ms. Ullman explained that she believes that Mr. Doe is lonely and isolated and needs the support of his family and that living in the home would provide him with that support. Based on her assessment, Ms. Ullman opined

9

that she believed the best course of action is for Mr. Doe to be permitted to move into the family

home immediately and have his wife and his parents, who all live in the family home, supervise

him around his daughter.

The Court questioned Ms. Ullman as follows:

THE COURT: . . . If you were to tell me your opinion of what you would
recommend, and we didn't have the perjury charge looming as an impediment, I
assume from your testimony you would say you would want him to enroll in some
type of counseling or treatment program?

THE WITNESS: I would.

THE COURT: Supervised visitation to start, pretty much immediately.

THE WITNESS: That's correct.

THE COURT: The family reunification in a residence would depend on those first
two steps moving along and, as the probation officer said, some trust being
established?

THE WITNESS: That's correct.

THE COURT: So you and the probation officer don't have a whole lot of -- and
the perjury issue makes this a lot more complicated. I assume your view is
because the counseling session would require candor, that just couldn't happen
with these charges pending?

THE WITNESS: That's correct.

(Transcript 143-44.)

Mrs. Doe testified about being with Mr. Doe at a time when his GPS monitoring device

alerted and being called by him at another time that the GPS monitoring device alerted.[4] The

---

[4]The plaintiffs assert in their brief that the Court "appears to have credited the GPS
evidence and to have discounted Mrs. Doe's testimony." (Doc. No. 30 at 5.) That statement,
however, is inaccurate. The Court did not discount Mrs. Doe's testimony and specifically
indicated during the hearing that it credited her testimony that she was with Mr. Doe at the time
the device alerted. *Id.* ("I certainly credit Mrs. Doe's testimony[.]"). The Court commented on

Court finds Mrs. Doe believable and her testimony credible as to this portion of her testimony.

Mrs. Doe also testified that she did not believe that her husband committed the crimes for which

he was convicted.

## C. Analysis

The Sixth Circuit has held that to be valid, a parole condition must be "directly related to

advancing the individual's rehabilitation and to protecting the public from recidivism." *U.S. v.*

*Ritter*, 118 F.3d 503, 505 (6th Cir. 1997). The plaintiffs contend that, "[m]ore recent decisions

from other circuits have held that conditions infringing on fundamental rights will only be upheld

'if the deprivation is narrowly tailored to serve a compelling government interest.'" (Doc. No. 2

at 8) (citing *U.S. v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005) and *United States v. Loy*, 237 F.3d

251, 256 (3rd Cir. 2001) ("[A] condition that restricts fundamental rights must be narrowly

tailored and directly related to deterring the defendant and protecting the public." (internal

quotation omitted)). The plaintiffs submit that regardless of which standard this Court uses, Mr.

Doe prevails because the restrictions at issue in this case neither promote rehabilitation nor

protect the public. The Court, however, disagrees.

### 1. Likelihood of Success on the Merits

The plaintiffs argue that courts have been highly critical of restrictions that prohibit

fathers who have been convicted of sex offenses not involving their children from having any

contact with their children, citing cases that conclude that the state must have compelling reasons

---

Mrs. Doe's testimony related to the telephone call Mr. Doe made to her telling her that his device
was inaccurately alerting. What the Court pointed out was that, even when crediting Mrs. Doe's
testimony, it did not mean that Mr. Doe had not been offending when the device alerted. It
simply meant that he was not offending at the time Mrs. Doe arrived at his location.

to interfere with parental rights and that courts should proceed cautiously when imposing such a

restriction. *See e.g., United States v. Smith*, 606 F.3d 1270, 1283 (10th Cir. 2010) (concluding

that "special conditions that interfere with the right of familial association can do so only in

compelling circumstances."); *United States v. Voelker*, 489 F.3d 139, 155 (3d Cir. 2007) ("there

must be sufficient 'evidence to support a finding that children are potentially in danger from their

parents, [otherwise] the states' interest cannot be said to be "compelling," and thus interference in

the family relationship is unconstitutional.'").[5] The plaintiffs assert that "[a] federal district court

recently addressed an analogous no contact restriction and concluded it 'was not reasonably

related to the danger the plaintiff poses to his children.'" (Doc. No. 2 at 10) (citing *Goings v.

Court Svcs. and Offender Supervision*, 786 F. Supp.2d 48, 73 (D. D.C 2011). The plaintiffs

submit:

> In that case, Goings was convicted of sexual battery by a person in a position of
> custodial authority. His parole conditions prohibited him from having any contact
> with his children, including by telephone, mail, and electronic communication.
> *Id.* at 54, 57. After unsuccessfully attempting to resolve the issue informally, Mr.
> Goings filed suit alleging that probation officials had violated his fundamental
> right to parent. *Id.* at 58. After noting that Mr. Goings was a low risk offender
> and there was no evidence that he was attracted to his own children, the Court
> concluded:

---

[5]The Court notes that the case before it differs from the majority of cases that the
plaintiffs cite in that it is not this Court that is fashioning an appropriate sentence, including
conditions of release, but rather it sits in review of the conditions imposed by the APA. *See e.g.,
Voelker*, 489 F.3d at 155 ("We need not reiterate that a sentencing court has broad discretion in
fashioning an appropriate sentence and in resolving any factual dispute relevant to that difficult
task. It is equally clear that the court should proceed cautiously in imposing any condition that
could impact Voelker's parental rights absent sufficiently reliable supporting evidence. We
realize, of course, that parental rights are not absolute and that they are subject to the state's
interest in the welfare of the defendant's children. Parents can 'lose custody of their children or
have restrictions placed on their parental rights' when there is sufficient evidence 'to support a
finding that children are potentially in danger from their parents.'"). Regardless of this
difference, the Court finds the cases informative and useful for its analysis.

> [a]bsent additional information supporting the defendant's position
> that the plaintiff is a danger to his children, there appears to be no
> basis to support [the] determination that the No Contact Provision
> is narrowly tailored or even reasonably related to the danger the
> plaintiff poses to his children.

*Id.* at 73. The court issued a preliminary injunction and enjoined enforcement of the restriction. *Id.* at 81.

Here, as in *Goings*, there is no evidence to support that Mr. Doe is a risk to his own children. To the contrary, Mr. Doe and his children have a very strong, loving bond that they maintained throughout his incarceration. Like Mr. Goings, Mr. Doe has been adjudicated a low risk offender. As in that case, this court should find that the PRC restriction against Mr. Doe is not narrowly tailored to a compelling government interest and therefore deprives him of his fundamental right to raise his children.

(Doc. No. 2 at 10-11.)

In their response, the defendants point out that the facts of *Goings* are distinguishable in significant ways to the facts here. In *Goings*, the plaintiff was a 23 year prison guard who had a consensual sexual relationship with a 16 year old inmate at a Florida prison. The inmate became pregnant and when the prison officials found out about Going's relationship with the inmate, Goings was fired from his job but was not charged with a crime or arrested at that time. Going's moved to the District of Columbia, where he had previously lived, and was unaware that two months after he left Florida he was charged with sexual battery by a person in a position of custodial authority and a warrant was issued for his arrest. Goings was unaware of the warrant and at no time attempted to evade arrest. Goings fathered three children over the next thirteen years and was active in the community as a football coach and PTA member. Thirteen years and ten months after the warrant was issued, the police discovered the warrant after Goings was

13

named as a respondent in a domestic dispute. Goings was transported to Florida, where he plead guilty to the crime of sexual battery. He was incarcerated for less than one year, followed by five years probation. As a condition of his probation, he was not permitted to have any contact with his children.

The Court agrees with the defendants that *Goings* is factually distinguishable in important ways. Goings' victim was a 16 year old female and his children were not in his victim profile (two boys and a daughter who was two years old). Goings was a young adult, seven years older than his victim. Further, and importantly, the nature of the crimes differ significantly – a relationship with an under-age girl versus forcible rape of a 16 year old girl and sexual imposition with her sister by a 35 year old man. Goings had nearly fourteen years of no similar illegal conduct and positive involvement with the community.

As the analysis of *Goings* highlights, the decision with which this Court is tasked is exceedingly fact dependent. After considering all of the briefing, the testimony, and the other evidence presented, those facts as they now stand before the Court significantly differ from those before the *Goings* court and are as follows.

Mr. Doe was 35 years old when he was convicted of forcibly raping a 16 year old girl and of several counts of sexual imposition with the girl's 13 year old sister. Mr. Doe's victims were not strangers, but rather were well known to Mr. Doe. Mr. Doe was in a position of trust over his victims, pastoring the youth group at church and having the girls babysit his children. Mr. Doe's daughter is currently 15 years old. Mr. Doe was incarcerated for seven years and has been out of prison for a few months.

Officer Haas is experienced in supervising sex offenders. Officer Haas and Licking

14

County's two sex offender specialists together decided on the post release control conditions to place on Mr. Doe. The APA and Licking County commonly impose against sex offenders like Mr. Doe no contact with minor prohibitions that include no contact with the offender's own children. The defendants currently permit Mr. Doe telephone calls to his children, church with them on Sundays, and have agreed to engage in negotiations to permit supervised visitation. The Chair of the Parole Board, Superintendent of the APA, and the Director of Sex Offender Services for the Ohio Department of Rehabilitation all believe the no contact with minors without prior permission condition is necessary to keep the public safe from Mr. Doe and to rehabilitate Mr. Doe.

Ms. Ullman is the only individual who personally assessed Mr. Doe and she believes that he is not a threat to his daughter. Ms. Ullman could not discuss with him the crimes of which he was convicted because of his pending perjury charges. Her assessment of Mr. Doe is necessarily based upon her assumption that Mr. Doe has accepted responsibility for the crimes of which he was convicted. Ms. Ullman agrees that her assessment would be of no value if Mr. Doe did not admit that he committed the crimes. During the assessment Mr. Doe could not be questioned as to the crimes of which he was convicted. Ms. Ullman recommends that Mr. Doe be permitted to return to his home immediately with supervision provided by his wife and his parents. Mr. Doe's wife and parents do not believe that Mr. Doe committed the offenses of which he was convicted. Some of those offenses occurred in the family home.

The perjury charges also make it impossible for Mr. Doe to attend sex offender counseling. The trial on those charges is scheduled for June 27, 2012. If there were no perjury charges pending, Ms. Ullman's recommendation would be to require Mr. Doe to engage in

15

counseling before being permitted to return to his home to live.

The Court views these facts in the same two categories testified to by several witnesses: static and dynamic. The static factors are Mr. Doe's crimes, the age and familiarity of his victims, his daughter's current age (15) and the age of his daughter when he went to prison (8), and the adults with whom Mr. Doe wishes to live. The dynamic factors are proof of compliance with the conditions currently placed upon Mr. Doe, the current assessment of Mr. Doe's risk of re-offending, and sex offender counseling. These dynamic factors, of course, can change. Indeed, in a few months the perjury trial will be held, which may open the door to counseling and an accurate assessment of the risk Mr. Doe poses to himself and others. As of today, however, the Court finds that the evidence before it supports the conclusion that the APA has narrowly tailored the conditions of Mr. Doe's post release control to directly relate to its dual purpose of protecting the public and rehabilitating Mr. Doe. The static and dynamic factors presented establish the type of compelling circumstances that support the condition imposed here.

Of real concern for the Court is that Mr. Doe does not or cannot admit to the crimes of which he was convicted, therefore preventing any accurate assessment of the risk he poses to himself and others and also preventing any type of sex offender counseling. Additionally, the individuals who would be tasked with supervising Mr. Doe do not believe that he committed the crimes of which he was convicted, crimes that occurred in the home in which they all lived. And, the Court is certainly inclined to pay close attention to, and grant a reasonable amount of deference to, those who are charged with rehabilitating criminal offenders and keeping the public safe. The APA, the Ohio Department of Rehabilitation and Corrections, and Officer Haas deal with these types of situations on a regular basis and are treating Mr. Doe in a manner similar to

16

similarly situated offenders.[6]

The Court would be inclined to revisit this ruling at a later date if changes occur in the dynamic category of facts, such as counseling for Mr. Doe, an assessment in which Mr. Doe could fully participate, and Mr. Doe's convincing track record of compliance with the conditions of post release control that are currently placed upon him.

Accordingly, the Court concludes that the evidence does not support a finding of a strong likelihood of success on the merits of Mr. Doe's constitutional claim. This factor in the injunctive relief analysis, therefore, weighs soundly in favor of denying the plaintiffs' request for emergency injunctive relief.

## 2. Irreparable Harm and Public Interest

The Court now turns to two of the remaining factors in the test to determine whether to issue emergency injunctive relief, *i.e.*, irreparable harm and the public interest. The plaintiffs argue that because the post release control condition violates Mr. Doe's constitutional right to parent his children, a finding of irreparable harm is mandated. (Doc. No. 2 at 15) (citing *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) ("[T]he Supreme Court held that when reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or

---

[6]The Court does not agree with the plaintiffs' argument that the imposition of this type of prohibition on other sex offenders shows that it is, by definition, not narrowly tailored. If the condition were applied without reference to the individual offender, the plaintiffs' argument would be persuasive. Here, however, the testimony was clear that three specialists in this field, Officer Haas and the two Licking County specialists, evaluated Mr. Doe's situation before deciding to apply the condition. Further, there are several unique aspects of this case, resulting from pending perjury charges that work in a particularized way to prevent a showing of progress, which would justify progressive extension of family contact. When evaluated in this way, a condition of post release control that has proven effective with a particular type of offender may be re-used frequently and still be considered narrowly tailored.

impaired, a finding of irreparable injury is mandated."). Further, the plaintiffs submit that "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" (Doc. No. 2 at 16.) Here, however, the Court has not found that there is a strong likelihood that Mr. Doe's constitutional rights are violated. Thus, no finding of irreparable harm is mandated nor is it necessarily in the public interest to grant the relief the plaintiffs request.

Although it is unclear if the plaintiffs offer this argument to show irreparable harm, they contend that if Mr. Doe is not permitted to return home, he may end up homeless and living under the homeless bridge in Licking County. Apparently, there is a bridge in Newark under which offenders, including sex offenders, live and use as their official address in APA documents. While the Court is certainly troubled by such a situation, there is no evidence from which the Court can find that Mr. Doe will be forced to live there.

Accordingly, these two factors weigh heavily in favor of denying the plaintiffs' request for emergency injunctive relief.

### 3. Harm to Others

The final factor in the injunctive relief analysis is harm to others. The Sixth Circuit has stated that "[t]he irreparable injury [the plaintiffs] will suffer if their motion for injunctive relief is denied must be balanced against any harm which will be suffered by [others] as a result of the granting of injunctive relief." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982). In this case, the Court has not found that Mr. Doe will suffer irreparable injury. Thus, this factor favors denying the plaintiffs' requests for emergency injunctive relief.

### III. CONCLUSION

All four factors of the test to determine whether the Court should grant the plaintiffs'

18

request for a temporary restraining order weigh in favor of denying such relief. Accordingly, the

Court **DENIES** the plaintiffs' application for a temporary restraining order.

       **IT IS SO ORDERED.**


_____5-3-2012_____
**DATE**

       **EDMUND A. SARGUS, JR.**
       **UNITED STATES DISTRICT JUDGE**